Filed 9/11/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re DESTINY D., a Person Coming Under the Juvenile Court Law. | B279742 |
| | (Los Angeles County Super. Ct. No. DK20132) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| SERGIO D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge. Affirmed.

Terence M. Chucas, by appointment of the Court of Appeal, for Defendant and Appellant.

Marcy C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel for Defendant and Respondent.

The juvenile court sustained allegations that Sergio D., the presumed father of 15-year-old Destiny D., had a history of alcohol abuse and was a current abuser of alcohol and Claudia A., Destiny's mother, had failed to protect the child from Sergio. The court declared Destiny a dependent child of the court, released her to Claudia's custody, limited Sergio to monitored visitation with Destiny and terminated its jurisdiction. Without challenging the court's findings at jurisdiction or disposition, Sergio contends the court acted in excess of its authority when it terminated dependency jurisdiction with a juvenile custody order at the conclusion of the combined jurisdiction/disposition hearing rather than setting a future review hearing. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Superior Court's Predependency Restraining Order and Custody and Visitation Orders*

Sergio and Claudia have a long history of engaging in domestic violence in Destiny's presence. During one incident in August 2016 Sergio held a knife to Claudia's throat. Destiny intervened to protect her mother; Sergio shoved Destiny, injuring her.

On August 18, 2016 Claudia petitioned the superior court for a restraining order to protect her from Sergio. On September 9, 2016, after an evidentiary hearing, the superior court issued a restraining order requiring Sergio to move out of the family home and stay at least 100 yards from Claudia.[1] In addition, the superior court issued temporary child custody and visitation orders granting Claudia and Sergio joint legal custody of Destiny, Claudia sole physical custody, and visitation for

---

[1] The restraining order expires on September 9, 2019.

2

Sergio on alternate weekends and three afternoons and evenings during the week after school until 8:00 p.m. The order specified the transfer of physical custody for visitation purposes would occur at a police station and stated Sergio "shall not consume any alcoholic beverage 12 hours prior to, and during, visitation" with Destiny.

2. *The Referral and Investigation*

On September 13, 2016 the Los Angeles County Department of Children and Family Services (Department) received a telephone referral alleging Sergio had inflicted serious physical and emotional abuse on Destiny. During an interview Claudia told the social worker Sergio had been violent throughout their 18-year relationship, but she had remained with him to keep her family together. Following the August 2016 incident, however, she finally had had enough and obtained the restraining and custody orders to protect herself and Destiny from Sergio.

Destiny confirmed her father's history of violent behavior toward her mother, stating he had "[p]ut his hands on my mom more times than I can count." Destiny reported Sergio typically did not hit her, but he did shove and injure her during the August 2016 incident when she tried to defend her mother. Destiny also admitted to engaging in self-harming "cutting" behaviors when she was 13 years old because she had been unable to cope with her parents' marital conflict.

Both Claudia and Destiny stated Sergio abused alcohol regularly and had a history of driving while intoxicated with Destiny in the car. While both Claudia and Destiny were concerned about Sergio's visitation while intoxicated, neither identified any incident since the superior court's orders were

obtained in which Sergio had consumed alcohol prior to or during a visit with Destiny.

Sergio denied engaging in any intimate partner violence. He claimed Claudia was volatile and aggressive and deliberately incited arguments. He denied abusing Destiny. He acknowledged pushing Destiny away during an argument with Claudia when Destiny intervened, but insisted "that was it." He did not injure her. Sergio also denied abusing alcohol.

In a follow-up telephone interview on October 27, 2016 Claudia reported everything had been going well. Destiny had not visited with Sergio and was thriving. Claudia had new insight into the extent to which the domestic violence had harmed Destiny and wished she had taken action earlier to protect herself and Destiny.

3. *The Dependency Petition and Detention Hearing*

On November 1, 2016 the Department filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect),[2] alleging Sergio and Claudia had a long history of domestic violence; Sergio had physically abused Destiny at least once during a violent altercation with Claudia; Sergio was a current abuser of alcohol and drove with Destiny while intoxicated; and Claudia had failed to protect Destiny from Sergio's violent conduct and alcohol abuse.

In the report prepared for the detention hearing the Department acknowledged the September 2016 restraining order had gone a long way toward protecting Destiny from domestic violence and both Sergio and Claudia appeared to be abiding by

---

[2]    Statutory references are to this code.

4

it. Nevertheless, the Department observed, Claudia had a history of disregarding Sergio's violent past to keep the family together, and the Department was concerned her insight into the effect of the domestic violence and Sergio's alcohol abuse on Destiny's well-being, although a positive development, was too recent to ensure Destiny's safety. The Department also believed all members of the family would benefit from court-ordered services. The court agreed, detained Destiny from Sergio and released her to Claudia provided Sergio not live in or visit the home. Sergio was granted monitored visitation. The court directed the Department to provide low cost/no cost referrals to Sergio for drug and alcohol rehabilitation counseling, domestic violence counseling, individual counseling and parenting classes.

The juvenile court set the jurisdiction hearing for December 13, 2016 and ordered the Department to address at that time closure of the case with a section 362.4 juvenile custody order.

4. *The Combined Jurisdiction/Disposition Hearing*

At the combined jurisdiction/disposition hearing Sergio vigorously argued for dismissal of the petition. He insisted the superior court's orders, including the restraining order, adequately protected Destiny and there was no need for the dependency court to intervene. He believed Claudia had made the referral that prompted the Department's involvement because she had been unhappy with the superior court's temporary custody order, which permitted Sergio unmonitored visitation as long as he did not consume alcohol. His counsel also argued, if Sergio picked up Destiny for her visitation while he was under the influence of alcohol, 15-year-old Destiny was old enough to realize it and refuse to ride with him.

5

Claudia argued the petition should be dismissed as to her because Destiny was no longer in danger from her failure to protect Destiny from Sergio. Quite the contrary, Claudia had done everything in her power to protect Destiny by obtaining the restraining order and visitation and custody orders.

Destiny's counsel argued Destiny remained in danger from Sergio notwithstanding the superior court's restraining order and custody and visitation orders. She argued the order requiring Sergio to refrain from consuming alcohol before picking Destiny up for a visit effectively, and improperly, imposed on Destiny the obligation to determine if her father had been drinking. In addition, Destiny's counsel argued, "It's not just the drinking that concerns us, it's also the anger. And there's nothing to cover that in the family law order." Destiny's counsel did not argue Destiny remained in danger because of Claudia's action or inaction.

The Department acknowledged the superior court's orders adequately protected Destiny from the risk of harm from domestic violence and recommended the court dismiss those allegations. However, it argued, the superior court's order requiring Sergio to refrain from consuming alcohol prior to visiting Destiny was insufficient to protect Destiny. More was needed, the Department asserted, including monitored visitation and programs for Sergio to address his long-standing alcohol dependency. The Department also reiterated that Claudia had a history of not appreciating the harm caused by Sergio's alcohol abuse and had not prevented him from driving while intoxicated when Destiny was in the car. The Department recommended the court sustain the allegations in the petition pertaining to both Sergio and Claudia, release Destiny to Claudia's custody and terminate its jurisdiction with a juvenile custody order granting

6

Claudia and Sergio joint legal custody, Claudia primary physical custody and Sergio reasonable visitation. In a last minute information report provided to the court the day of the hearing, the Department requested Sergio's visitation with Destiny be monitored.

The juvenile court adopted the Department's recommendations. It dismissed the subdivision (a) counts and the subdivision (b) allegations relating to domestic violence, concluding the restraining order had removed any threat to Destiny, but rejected Sergio's and Claudia's requests the remaining allegations pertaining to each of them be dismissed. The court sustained allegations under Section 300, subdivision (b), relating to Sergio's alcohol abuse and Claudia's failure to protect, stating, "While it was all well argued by father's counsel, I cannot agree that this is just a family law case that should be dismissed and sent back to family law. We need the ability to protect the child from both parents. We have the ability to do so. I make a finding regarding that. I don't agree with mother's counsel that mother with the knowledge of the father's prolonged, protracted drinking habits and his anger management problems that were facilitated by his current drinking, she needed to have done something much, much sooner than she did. And failing to do so, she's liable for the risks to the child as well."

The juvenile court declared Destiny a dependent child of the court, removed her from Sergio's custody pursuant to section 361, subdivision (c), and released her to Claudia's

custody.[3]  Over Sergio's objection,[4] the court terminated its jurisdiction with a juvenile custody order that granted Claudia and Sergio joint legal custody of Destiny, Claudia sole physical custody and modified the superior court's prior visitation order by

---

[3]     The court's citation to section 361, subdivision (c), in connection with its orders concerning Sergio was error.  That provision applies only when the issue is whether to remove a dependent child from the physical custody of a parent with whom the child was residing at the time the dependency petition was initiated.  (See *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 347.) Nonetheless, the error was harmless:  In making its disposition orders the juvenile court has broad discretion under sections 361, subdivision (a)(1), and 362, subdivision (a), to resolve issues regarding the custody and control of the child.  (See *Anthony Q.,* at pp. 346, 353-354.)

[4]     In objecting to the court's decision to terminate its jurisdiction, Sergio's counsel urged the court to continue supervision and provide enhancement services to Sergio and Destiny so they could begin to repair their relationship:  "I think this court should . . . make sure that the father has a reasonable chance of having a relationship with this child.  I think if the court dismisses this case, terminates this case, I think the chances of this father and this child getting back together are practically nil given the estranged relationship between these two people, and the angst that is going on in this family law matter.  So I am asking that the court keep the case open. . . . And order the father into the programs.  But most importantly, order conjoint counseling with the minor so that the father can get back with this child."

requiring Sergio's visitation of at least eight hours per week be monitored.[5]

## DISCUSSION

1. *The Juvenile Court Possesses the Statutory Authority To Terminate Its Jurisdiction at Disposition in an Appropriate Case Upon Releasing the Dependent Child To a Custodial Parent*

   a. *Standard of review*

Without challenging any of the juvenile court's findings, Sergio contends the court acted in excess of its statutory authority when it terminated its jurisdiction at the conclusion of the combined jurisdiction/disposition hearing. The question whether a court is authorized to perform a certain act under a statutory scheme is a purely legal question subject to de novo review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 344; see *In re Andrew A.* (2010) 183 Cal.App.4th 1518, 1525 ["'[t]he question whether a court is authorized to perform a certain act is a purely legal question which entails construction of statutory language and application of legal principles . . . [to which] we apply de novo review'"].)

---

[5] The court stayed the termination order for one day "pending receipt of juvenile custody order on December 14, 2016." The court received a custody order from counsel for Claudia and filed it on December 14, 2016. Sergio's notice of appeal, filed December 14, 2016, identifies only the December 13, 2016 order.

b. *The court's statutory authority at disposition to make any reasonable orders necessary to protect the dependent child includes the power to terminate jurisdiction in an appropriate case*

At the jurisdiction stage of a dependency proceeding, the court determines whether the child is a person described by section 300. (§§ 355, 356.) If the juvenile court finds a basis to assume jurisdiction, the court is then required to hear evidence on the question of the proper disposition for the child. (§ 358, subd. (a); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248; *In re Anthony Q., supra,* 5 Cal.App.5th at p. 345; see Cal. Rules of Court, rules 5.684(g), 5.690.)[6] Typically, once the child has been adjudged to be a dependent child pursuant to section 360, subdivision (d), the juvenile court determines what services the child and family need to be reunited and free from court supervision. (*In re Carl H.* (2017) 7 Cal.App.5th 1019, 1037; *In re Anthony Q.,* at p. 346; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 302-303.) The court then sets a review hearing, which must be held within six months, to evaluate the family's circumstances and decide whether continued dependency jurisdiction is necessary. (§§ 366.21, subd. (e) [review hearing if child removed from physical custody of his or her parent]; 364 [review hearing if child remains in the custody of one or both parents].)

Under this statutory scheme, Sergio contends, once the court asserted dependency jurisdiction and released Destiny to Claudia's custody at disposition, it was obligated to set a section 364 review hearing before it could consider terminating its jurisdiction. (See § 364, subd. (a) ["[e]very hearing in which

---

[6]     Rule references are to the California Rules of Court.

an order is made placing a child under the supervision of the juvenile court pursuant to Section 300 and in which the child is not removed from the physical custody of his or her parent or guardian shall be continued to a specific future date not to exceed six months after the date of the original disposition hearing"].) Alternatively, he observes, the court could have set aside its jurisdiction findings and dismissed the petition upon finding "that the interests of justice and the welfare of the minor require the dismissal, and the parent or guardian of the minor is not in need of treatment or rehabilitation." (§ 390; see *In re Carl H., supra,* 7 Cal.App.5th at p. 1038.) However, the court did neither. Instead, it sustained jurisdiction based on the conduct of both parents, released Destiny to her custodial parent and closed the case at the conclusion of the disposition hearing. Emphasizing that the court's action was not directly authorized by any specific statutory language or rule 5.695, which governs findings and orders of the court at disposition,[7] Sergio argues the court

---

[7]     Rule 5.695(a) provides, "At the disposition hearing, the court may: [¶] "(1) Dismiss the petition . . . ; [¶] (2) [p]lace the child under a program of supervision for a time period consistent with section 301 and order that services be provided; [¶] (3) [a]ppoint a legal guardian for the child . . . ; [¶] (4) [d]eclare dependency and appoint a legal guardian for the child . . . ; [¶] (5) [d]eclare dependency, permit the child to remain at home, and order that services be provided; [¶] (6) [d]eclare dependency, permit the child to remain at home, limit the control to be exercised by the parent or guardian, and order that services be provided; or [¶] (7) [d]eclare dependency, remove physical custody from the parent or guardian, and: [¶] (A) After stating on the record or in writing the factual basis for the order, order custody to a noncustodial parent, terminating jurisdiction, and direct that *Custody Order--Juvenile--Final Judgment* (form JV-200) be

exceeded its authority in terminating its jurisdiction. His argument is flawed in multiple respects.

First, contrary to Sergio's contention, section 364, subdivision (a), which requires the juvenile court to schedule a review hearing within six months of the original disposition hearing when the court allows the child to remain at home with ongoing court supervision, is not an impediment to the court's decision to terminate jurisdiction at the conclusion of a disposition hearing. That section requires a post-disposition review hearing only when the court has released the child to parental custody and found that continued supervision with family maintenance services is necessary to protect the child from the risk of serious harm.[8] If services and ongoing supervision are not needed, section 364, subdivision (a), is not implicated.

Second, Sergio's narrow characterization of the juvenile court's discretion at disposition is contrary to the statutes that grant the juvenile court broad authority to enter orders to protect a dependent child and to reunite the family and terminate jurisdiction as quickly as possible. (See *John v. Superior Court* (2016) 63 Cal.4th 91, 95-96 [court's fundamental task in statutory

---

prepared and filed . . . ; [¶] (B) After stating on the record or in writing the factual basis for the order, order custody to a noncustodial parent with services to one or both parents; or [¶] (C) Make a placement order and consider granting specific visitation rights to the child's grandparents."

[8] If the court permits a parent or guardian to retain custody of a dependent child subject to its supervision, "the parents or guardians shall be required to participate in child welfare services or services provided by an appropriate agency designated by the court." (§ 362, subd. (c).)

12

construction is to construe statute in light of statutory language and in context of statutory scheme as a whole, to effect legislative intent and avoid absurd results]; *In re Anthony Q., supra,* 5 Cal.App.5th at p. 344 [same].)  Apart from the statutory limitation on its authority to remove a child from a custodial parent with whom the child was residing at the time the dependency petition was filed (see § 361, subd. (c)), the juvenile court enjoys wide discretion to make any orders necessary to protect the dependent child (§ 361, subd. (a)), including "all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child" (§ 362, subd. (a)) and those orders directed to the parents of a dependent child that it "deems necessary and proper for the best interests of or for the rehabilitation of the minor" (§ 245.5).  That authority necessarily includes, in an appropriate circumstance, discretion to terminate dependency jurisdiction when the child is in parental custody and no protective issue remains.  (See § 361, subd. (a)(1) [limitations on parental rights "may not exceed those necessary to protect the child"]; *In re Ethan C.* (2012) 54 Cal.4th 610, 625 ["[e]ven after a dependency finding has been made, the statutory scheme is designed . . . to return full custody and control to the parents or guardians if, and as soon as, the circumstances warrant"]; cf. § 364, subd. (c) [absent evidence the conditions still exist that would justify the initial assumption of jurisdiction under section 300 or that those conditions are likely to exist if supervision is withdrawn, "[t]he court shall terminate its jurisdiction"].)[9]

---

[9]     Although rule 5.695 articulates some of the options available to the court under sections 245.5, 358, 360, 361, 361.2 and 390, the rule does not (and could not) preclude other options at disposition if authorized by statute.  (See *In re Abbigail A.*

13

Third, Sergio's contention that the juvenile court's only options at disposition if it permits a child to remain at home are to set aside the jurisdiction findings and dismiss the dependency petition (§ 390; rule 5.695(a)(1)) or to declare dependency and continue court supervision with services (§§ 361, subd. (a), 364, subd. (a); rule 5.695(a)(5)), disregards the court's statutory discretion to impose necessary limitations on an offending parent's contact with a dependent child before terminating its jurisdiction. (See § 362.4 [before terminating jurisdiction over "minor who has been adjudged a dependent of the juvenile court," court may issue protective orders under section 213.5 and orders determining custody of, or visitation with, the dependent child].) If no substantial risk of harm exists once those restrictions are in place, and ongoing supervision is unnecessary, termination of jurisdiction is appropriate. (Cf. *In re Chantal S.* (1996) 13 Cal.4th 196, 204 ["[t]he juvenile court's determination that continuation of dependency was at that time unnecessary for Chantal's protection, was in turn [properly] premised on the existence of the court's custody and visitation order"].) To hold otherwise and conclude that court supervision must be continued, even absent a continuing risk of harm, simply because the protective and custody orders that eliminated the risk were made at the conclusion of a disposition hearing, rather than a

_____

(2016) 1 Cal.5th 83, 92 [Judicial Council may not adopt rules that are inconsistent with the governing statutes]; *People v. Hall* (1994) 8 Cal.4th 950, 960 [same]; see also *Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc.* (1997) 60 Cal.App.4th 352, 364 ["[i]t is settled [law] that in order to comply with the constitutional requirement of consistency with the statutory law, a rule of court must not conflict with statutory intent"].)

subsequent review hearing, would be wholly at odds with the fundamental goal of the dependency system to return the child to his or her custodial parent and terminate dependency jurisdiction as soon as circumstances permit. (See *In re Ethan C., supra,* 54 Cal.4th at p. 625.)[10]

Our conclusion that the juvenile court retains the discretion in an appropriate case to terminate its jurisdiction at the close of a disposition hearing when it finds services and continued court supervision are not necessary to protect the child is further strengthened, if not compelled, by analogy to section 361.2, which permits the juvenile court to terminate its jurisdiction at disposition after placing the dependent child with a noncustodial parent and ordering that parent to become the legal and physical custodian of the child. (See § 361.2, subd. (b)(1);[11] *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1452 [jurisdiction properly terminated at disposition under section

---

[10] Exercise of the court's discretion to terminate dependency jurisdiction at the conclusion of a disposition hearing when protective and custody orders are in place and court supervision is unnecessary would seem particularly appropriate in failure-to-protect cases under section 300, subdivision (b), which specifically provides that "[t]he child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness."

[11] Section 361.2, subdivision (b), provides in part, "If the court places the child with th[e] [previously noncustodial] parent it may do any of the following: [¶] (1) Order that the parent become legal and physical custodian of the child. The court may also provide reasonable visitation by the noncustodial parent. The court shall then terminate its jurisdiction over the child. . . ."

361.2, subdivision (b)(1), absent evidence child was at continuing risk of harm].) It simply makes no sense to conclude, as Sergio urges, that the Legislature intended to authorize the juvenile court to terminate its jurisdiction at disposition after placement of a child with a noncustodial parent when there is no longer a reason for court supervision and not afford the juvenile court the same discretion when the child has been released to a custodial parent and orders made at disposition have fully resolved any issue of continuing risk of harm. (Cf. *In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1286 ["'a section 361.2 placement with a noncustodial parent should be treated in the same manner as a section 362 placement with a custodial parent'"]; *In re Pedro Z.* (2010) 190 Cal.App.4th 12, 21 [same].)

As with placement of a child with a noncustodial parent and termination of jurisdiction under section 361.2, subdivision (b)(1), whether the custodial parent to whom a child is released is "offending" or "nonoffending" is, of course, relevant to the appropriate disposition orders, but not necessarily outcome determinative. (See *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 300 [nothing in section 361.2 requires a previously noncustodial parent to be nonoffending to be considered for placement; "'[t]he term "nonoffending" does not appear in the text of section 361.2'"]; *In re Nickolas T.* (2013) 217 Cal.App.4th 1492 [same]; but see *In re A.A.* (2012) 203 Cal.App.4th 597, 607 [implicitly reading a requirement that noncustodial parent be nonoffending to obtain custody under section 361.2].) Thus, as we discuss more fully in the next section, the failure-to-protect finding as to Claudia is relevant for the court to consider in making orders at disposition, including whether to terminate jurisdiction; it does not categorically disqualify her from custody

or otherwise limit the court's ability to issue orders necessary to further Destiny's best interest.

Arguing in favor of affirming the order terminating jurisdiction, the Department urges us to adopt the reasoning of *In re A.J.* (2013) 214 Cal.App.4th 525, in which our colleagues in Division One of the Fourth Appellate District held the juvenile court possessed "inherent authority" to terminate jurisdiction at the disposition hearing when further supervision was unnecessary to protect the child.  In that case, during a contested disposition hearing, the juvenile court declared A.J. a dependent child of the court, removed her from her mother's custody and placed her with her out-of-state, nonoffending, noncustodial biological father, Joshua.  The court continued the disposition hearing for lack of proper notice to Joshua and indicated it would, at the continued hearing, consider terminating its jurisdiction after it had more information about A.J.'s adjustment to living with Joshua.  After several continuances, at a combined contested disposition and six-month review hearing, the court heard evidence concerning A.J.'s progress with Joshua.  Thereafter, the court declared Joshua A.J.'s presumed father and terminated its jurisdiction, stating, "'I don't think there's a protective issue at this point.'"  (*Id.* at p. 535.)

On appeal A.J.'s mother, Jamie, argued the juvenile court lacked the statutory authority at disposition to place A.J. with Joshua and terminate its jurisdiction.  When the court placed A.J. with Joshua, Jamie observed, Joshua had not been declared a presumed father.  Consequently, she argued, neither section 361.2, which permits placement of a dependent child with a noncustodial parent and authorizes termination of jurisdiction (see *In re Zacharia D.* (1993) 6 Cal.4th 435, 454 ["only a

17

presumed father is entitled to assume immediate custody" under section 361.2]), nor section 364, which only applies if A.J. had not been removed from Jamie's custody, authorized the court's termination order.

The Court of Appeal agreed that, "[a]t the time the [juvenile] court ordered that A.J. be placed with [Joshua] in Hawaii, and indicated its intention to terminate jurisdiction, it had found that Joshua was a mere biological father, not the presumed father. For this reason, as Jamie contends, section 361.2 did not govern the juvenile court's custody analysis." (*In re A.J., supra,* 214 Cal.App.4th at p. 536.) The appellate court also agreed section 364, authorizing jurisdiction following a child's release to his or her custodial parent, was inapplicable because A.J. had been removed from the custody of her mother. (*In re A.J.,* at p. 536.) Nevertheless, while Joshua's request for custody and termination of jurisdiction "did not fit neatly within the parameters of either section 361.2 or section 364" (*ibid.*), the appellate court held the juvenile court had the inherent authority to terminate jurisdiction after finding by clear and convincing evidence it was in A.J.'s best interests to be placed with Joshua and no further protective issue justified its retention of jurisdiction. (*Id.* at pp. 536-537.)

In our view, the *In re A.J.* court need not have relied on the juvenile court's inherent authority to find termination of jurisdiction proper. By the time the court terminated jurisdiction, Joshua had been declared a presumed father; thus, section 361.2 provided adequate statutory authority for the court's action. (As for placement with Joshua prior to declaring him a presumed father, section 362, subdivision (a), authorized

18

the court to make any and all orders for the care and supervision of the dependent child.)

Still, *In re A.J.* is not wholly inapposite. In addition to its reliance on the juvenile court's inherent authority, the *In re A.J.* court explicitly recognized the juvenile court's broad statutory authority under section 245.5 to direct any and all orders to the parent or parents of a child that the court deems necessary and proper to further the best interest of the child. (*In re A.J., supra*, 214 Cal.App.4th at pp. 536-537 [""[t]he juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion""].) As discussed, that breadth of statutory authority necessarily includes the discretion to terminate jurisdiction at the conclusion of the disposition hearing in an appropriate case when child welfare services and continued court supervision are no longer necessary to protect the child.

2. *The Juvenile Court Did Not Abuse Its Discretion by Terminating Its Jurisdiction at the Disposition Hearing*

In holding the juvenile court has statutory authority to terminate dependency jurisdiction at the conclusion of a disposition hearing, we do not intend to suggest such action should be the norm. To the contrary, it will be an unusual case when protections imposed at disposition will be sufficient to permit the conclusion that termination is appropriate. It will be rarer still for a juvenile court to reach that conclusion when the parent with whom the child remains has been found to be an offending parent. Nevertheless, as in the analogous section 361.2 context, the court's decision is to be guided by the relevant facts. (Cf. *In re D'Anthony D., supra,* 230 Cal.App.4th at pp. 300-303 [although section 361.2 does not disqualify an offending

19

noncustodial parent, the offense is relevant and properly considered as part of the detriment determination under that provision]; *In re Nickolas T., supra,* 217 Cal.App.4th at pp. 1505-1506 [same].) Jurisdiction should not be terminated unless the court concludes services and ongoing supervision are not necessary to protect the child. (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1134.)

Sergio suggests there is an inherent conflict between the juvenile court's jurisdiction finding that Claudia's failure to protect Destiny posed a substantial risk of harm to the child (see *In re Carlos T.* (2009) 174 Cal.App.4th 795, 803 ["dependency jurisdiction is not warranted under subdivision (b) if, at the time of the jurisdiction hearing, there no longer is a substantial risk that the child will suffer harm"]; *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1397 [same]), on the one hand, and its order the same day terminating jurisdiction after releasing Destiny to Claudia on the ground there remained no further need for continuing court supervision, on the other. (See *In re I.G.* (2014) 226 Cal.App.4th 380, 387 ["[i]t is a clear abuse of discretion to make findings that a minor is at risk in her home, yet return the minor home and terminate supervision and dependency"].) However, viewed in the aggregate, the court's findings are fully reconcilable. Having dismissed the allegations concerning domestic abuse on the ground the restraining order obtained by Claudia eliminated any risk of harm, the juvenile court focused on the risks Sergio's alcohol abuse posed for Destiny in connection with Sergio's visitation rights and whether Claudia's insight into the effects of such alcohol abuse were too recent to adequately protect Destiny from harm. By modifying the superior court's visitation order to require monitored

visitation for Sergio and prohibiting Claudia from serving as the monitor, the court eliminated those risks, and thereafter reasonably concluded further court supervision was unnecessary. (See *In re Chantal S., supra,* 13 Cal.4th at p. 204 ["[a]s the present case illustrates . . . , there are situations in which a juvenile court may reasonably determine that continued supervision of the minor as a dependent child is not necessary for the child's protection, and at the same time conclude that conditions on visitation are necessary to minimize, if not eliminate, the danger that visits might subject the minor to the same risk of physical abuse or emotional harm that previously led to the dependency adjudication"].)

Finally, Sergio contends termination of jurisdiction was inherently prejudicial because it effectively denied him reunification and/or enhancement services vital to repairing the rupture in his relationship with Destiny. Because Destiny remained with her custodial parent, Sergio was not entitled to reunification services. (See § 16507, subd. (b) ["[f]amily reunification services shall only be provided when a child has been placed in out-of-home care, or is in the care of a previously noncustodial parent under the supervision of the juvenile court"]; *In re A.L.* (2010) 188 Cal.App.4th 138, 145 [no reunification services are called for when a child is not removed from her custodial parent]; see generally *Bridget A. v. Superior Court, supra,* 148 Cal.App.4th at p. 303 [when child remains in home of parent, proper form of child welfare services is family maintenance services, not family reunification services].)

Sergio was also not entitled to what are now often referred to in dependency jargon as enhancement services, "child welfare services offered to the parent not retaining custody, designed to

21

enhance the child's relationship with that parent." (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1497, fn. 1; see *In re A.C.* (2008) 169 Cal.App.4th 636, 642, fn. 5 ["'enhancement' services are 'not designed to reunify the child with that parent, but instead to enhance the child's relationship with that parent by requiring that parent to address the issues that brought the child before the court'"].)  An order for enhancement services is subject to the court's discretion.  (See § 362, subd. (a); *In re A.L., supra,* 188 Cal.App.4th at p. 145.)  The Department was ordered to provide Sergio with referrals for services at the detention hearing.  Whether or not to continue jurisdiction in order to permit Sergio to participate in additional services, given Destiny's safe placement with Claudia, was a decision for the court.  Sergio has not shown the court's rejection of his request for some form of enhancement services was arbitrary, capricious or patently absurd.  (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [under abuse of discretion standard, order must be affirmed unless juvenile court has ""exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination""].)

## DISPOSITION

The disposition order terminating dependency jurisdiction is affirmed.

PERLUSS, P. J.

We concur:

ZELON, J.                    SEGAL, J.

22