Filed 7/14/21  In re A.R. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.R. et al., Persons Coming Under the Juvenile Court Law. | B309682 (Los Angeles County Super. Ct. No. 20CCJP01768) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>B.C.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Greg S. Barnes, Judge.  Affirmed.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

—————————————

The Los Angeles County Department of Children and Family Services (DCFS) asserted dependency jurisdiction pursuant to Welfare and Institutions Code section 300, subdivision (b)(1)[1] over 17-year-old A.R., 18-month-old L.F., and 16-day-old A.F., on the grounds that A.F. tested positive for methamphetamine and amphetamine shortly after the children's mother (mother) gave birth to A.F., and that mother's use of these substances presented a substantial risk of serious physical harm to the children. At an adjudication hearing, the juvenile court sustained these jurisdictional allegations, declared A.R., L.F., and A.F. dependents of the court, granted A.R.'s father

_____

[1] Undesignated statutory citations are to the Welfare and Institutions Code. Section 300, subdivision (b)(1) provides in pertinent part: "A child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] . . . The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." (§ 300, subd. (b)(1).)

(C.R.) sole legal and physical custody of A.R. and unmonitored visitation to mother, released L.F. and A.F. to their father (M.F.) and mother, and terminated jurisdiction.

Mother argues that termination of dependency jurisdiction at the adjudication hearing, by itself, demonstrates no "current" risk to the children, and that the court therefore erred in declaring the children dependents of the juvenile court. Mother, however, expressly disavows any challenge to the juvenile court's jurisdictional findings. Other than acknowledging the juvenile court's discretion to consider alternatives to declaring the children dependents of the court, mother fails to argue that any of those alternative dispositions would have been appropriate here. Because mother fails to establish the juvenile court erred, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize only those facts relevant to this appeal.

On March 27, 2020, DCFS filed a juvenile dependency petition, alleging jurisdiction over 17-year-old A.R., 18-month-old L.F., and 16-day-old A.F. under section 300, subdivision (b)(1). The petition alleged three counts: count b-1, count b-2, and count b-3.

Count b-1 alleged: "On 3/15/2020, the child [A.F.] was born suffering from a detrimental condition. Such condition consisted of a positive toxicology screen for methamphetamine and amphetamine. Such condition would not exist except as a result of unreasonable acts by the child's mother, . . . placing the child at risk of physical harm and damage. Such substance abuse by the mother endangers the child's serious physical health and safety and places the child at risk of physical harm and damage."

Count b-2 averred: "The children [A.R.], [L.F.,] and [A.F.'s] mother . . . is a current user of methamphetamine and amphetamine which renders the mother incapable of providing the children with regular care and supervision. The mother used illicit drugs during the mother's pregnancy with . . . [A.F.] and had a positive toxicology screen for methamphetamine and amphetamine on 3/15/2020, at the child's birth. The children [L.F.] and [A.F.] are of such a young age that the children require constant care and supervision and the mother's substance abuse inhibits the mother's ability to provide constant care and supervision of the children. Such substance abuse by the mother endangers the children's physical health and safety and places the children at risk of serious physical harm, damage and danger."

Count b-3 further averred: "The children [L.F.'s] and [A.F.'s] father, [M.F.,] is a current user of marijuana which renders the father incapable of providing the children with regular care and supervision. On 03/20/2020, the father had a positive toxicology screen for marijuana. The children are of such a young age that the children require constant care and supervision and the father's substance abuse inhibits the father's ability to provide constant care and supervision of the children. Such substance abuse by the father endangers the children's physical health and safety and places the children at risk of serious physical harm, damage and danger."

On March 27, 2020, DCFS filed a detention report.[2] On March 16, 2020, DCFS received a referral alleging that mother

---

[2] The remainder of this paragraph and the following two paragraphs summarize relevant aspects of the detention report.

gave birth to A.F., and mother and A.F. tested positive for methamphetamine shortly after A.F.'s birth. Later that day, a social worker arrived at the hospital where A.F. was born, and a registered nurse confirmed that mother and A.F. had tested positive for methamphetamine.[3] Another nurse reported that the child did not have any withdrawal symptoms.

The social worker interviewed mother at the hospital on March 16, 2020. Mother repeatedly claimed that she did not consume methamphetamine. Mother stated that at that time, L.F. was residing with M.F. Mother also told the agency that A.R. stays with C.R. "half the time." The following day, mother admitted to DCFS that she used methamphetamine "two times in the last week"; she claimed "she was stressed and she d[id] not know why she did it."

When DCFS later interviewed M.F. and C.R., they each denied knowing mother had used narcotics. C.R. reported to the agency that A.R. is developmentally delayed, has been "diagnosed with 22Q 11.2 Deletion Syndrome," and "receives speech therapy." A.R. told DCFS he did not know "what drugs were," and he never saw mother "smoking anything, talking, walking or acting funny or angry . . . ."

On April 1, 2020, the juvenile court held a detention hearing. The court declared C.R. the presumed father of A.R., and M.F. the presumed father of L.F. and A.F. The court removed A.R., L.F., and A.F. from mother's custody, and released A.R. to C.R., and L.F. and A.F. to M.F. The court authorized monitored visits for the children with mother. The court ordered

---

[3] Medical records attached to the detention report indicate that A.F. and mother each received a "presumptive positive" result for "Amphet/Methamphet."

DCFS to provide family maintenance services to the parents and children, and gave the agency discretion to liberalize mother's visits.

On May 14, 2020, DCFS filed a jurisdiction/disposition report.[4] When the agency interviewed mother on May 7, 2020, mother stated she smoked methamphetamine two or three times while she was pregnant, and that the last time she smoked methamphetamine was approximately five days before she gave birth to A.F. Mother said that "she did [not] have any concerns regarding the effect of the drug on her new born baby, and did not think that the meth[amphetamine] would show up on her drug test." "[M]other stated that she did not smoke much, and only had 2 or 3 puffs . . . ." "[M]other denied any concerns of her substance use interfering with her parenting abilities and stated that she only smoked meth[amphetamine] 3 times, . . . she ha[d] quit smoking meth[amphetamine, and] . . . she [was] no longer associating with the people that introduced her to the drugs." Mother received negative test results for drug tests conducted in March and April 2020.

DCFS recommended that the juvenile court declare the children dependents of the court, remove them from mother, terminate jurisdiction over A.R., issue a family law order granting C.R. sole legal and physical custody of A.R. and monitored visits for mother, and, with regard to L.F. and A.F., offer family maintenance services to M.F. and family reunification services to mother.

---

[4] The remainder of this paragraph and the following paragraph summarize relevant aspects of the jurisdiction/disposition report.

DCFS filed a last minute information report on November 18, 2020.[5] The South Bay Family Recovery Center issued a letter dated July 18, 2020, wherein it represented that mother completed a 90-day outpatient treatment program that included a process group and weekly individual counseling, and covered relapse prevention, drug education/early recovery, anger management, and parenting. Mother received negative test results for drug tests conducted between March 25 and November 5, 2020, although she did fail to appear for a test scheduled on September 28, 2020.

On September 21, 2020, a social worker assigned to the case stated "her recommendation would be to terminate services for the family" because "[m]other ha[d] completed all services." The social worker also noted the South Bay Family Recovery Center had reported "mother [was] a model case" who had "particat[ed] in her classes." The social worker also stated that on September 1, 2020, the agency had liberalized mother's visits to "unmonitored overnights."

The juvenile court held an adjudication hearing on December 3, 2020. The court sustained counts b-1 and b-2, dismissed count b-3, and declared all the children dependents of the court. In the course of issuing its jurisdictional rulings, the court remarked, "[W]hile mother has been engaged presently, the fact that she was able to [consume a narcotic] surreptitiously for a period of time even while pregnant and thinking this would not be revealed or otherwise detected is a cause for concern."

---

[5] The remainder of this paragraph and the following paragraph summarize relevant aspects of the last minute information report.

The juvenile court also released L.F. and A.F. to mother and M.F., and issued a custody order for A.R. that granted sole physical and legal custody to C.R. and unmonitored visitation to mother. The court terminated jurisdiction over the three children.[6]

On December 15, 2020, mother appealed the juvenile court's December 3, 2020 rulings.

## DISCUSSION

It is black letter law that "[a]t the dispositional phase of the proceedings . . . the court has discretion to adjudge the minor a dependent of the court and to enter dispositional orders." (*In re I.I.* (2019) 42 Cal.App.5th 971, 976.) "A court exceeds the limits of [that] legal discretion if its determination is arbitrary, capricious or patently absurd. The appropriate test is whether the court exceeded the bounds of reason." (See *In re L.W.* (2019) 32 Cal.App.5th 840, 851 (*L.W.*).) If, however, the appellate challenge is that the juvenile court was not authorized to perform a certain act under the statutory scheme that governs dependency proceedings, then we review that issue de novo. (*In re Destiny D.* (2017) 15 Cal.App.5th 197, 205 (*Destiny D.*).)

Additionally, "[t]he juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.' [Citations.] . . . ' "When an appellant fails to raise a point,

_____

[6] Although the minute orders for the adjudication hearing state that the juvenile court issued case plans for each child, the juvenile court's docket does not reflect any such case plans. (See also Evid. Code §§ 452, subd. (d), 459 [providing that we may take judicial notice of the records of the courts of this state].) It thus appears that this notation is a typographical error.

8

or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.]" (*In re J.F.* (2019) 39 Cal.App.5th 70, 79.)

It appears mother's principal argument is that the juvenile court's dependency declaration as to the three children and its decision to terminate dependency jurisdiction are inconsistent orders reflecting an abuse of discretion. Yet, mother does not challenge on appeal the juvenile court's jurisdictional findings. She also fails to cite legal authority invalidating a dependency finding merely because the juvenile court also has terminated jurisdiction upon making such a finding, and there is legal authority to the contrary. Finally, although mother acknowledges that the juvenile court had alternatives to declaring the children dependents of the court, she does not argue that the juvenile court abused its discretion in not selecting one of those alternatives.

We reject mother's contention that "there is no authority for finding a child a dependent when the court terminates jurisdiction immediately after finding jurisdiction." *Destiny D.* held that "the juvenile court retains the discretion in an appropriate case to terminate its jurisdiction at the close of a disposition hearing when it finds services and continued court supervision are not necessary to protect the child . . . ." (See *Destiny D.*, *supra*, 15 Cal.App.5th at p. 208.) The Court of Appeal reasoned: "To hold otherwise and conclude that court supervision must be continued, even absent a continuing risk of harm, simply because the protective and custody orders that eliminated the risk were made at the conclusion of a disposition hearing, rather than a subsequent review hearing, would be wholly at odds with the fundamental goal of the dependency system to return the

9

child to his or her custodial parent and terminate dependency jurisdiction as soon as circumstances permit."[7]  (*Destiny D.*, at p. 208.)

Admittedly, the *Destiny D.* court noted "it will be an unusual case when protections imposed at disposition will be sufficient to permit the conclusion that termination is appropriate," and "[i]t will be rarer still for a juvenile court to reach that conclusion when the parent with whom the child remains has been found to be an offending parent."  (See *Destiny D.*, *supra*, 15 Cal.App.5th at p. 211.)  We further acknowledge the juvenile court did not impose any "protections" for L.F. and A.F. when it released those children to mother, and that the court permitted mother to have unmonitored visits with A.R.  Mother does not, however, claim the juvenile court erred in terminating jurisdiction and, as discussed further below, she has elected not to challenge the jurisdictional findings underpinning the court's decision to declare the children dependents.

Although mother argues in her opening brief "there was no evidence on December 3, 2020, to support the court's finding as to

---

[7] Mother argues that "nothing in [rule 5.695 of the California Rules of Court, the rule that governs orders made at a disposition hearing,] indicates a court may find a child a dependent, place the child with parents absent supervision, and immediately terminate jurisdiction."  Although the *Destiny D.* court acknowledged that rule 5.695 does not address this issue, the Court of Appeal nonetheless held that a juvenile court has the "statutory authority . . . to terminate jurisdiction at the conclusion of the disposition hearing in an appropriate case when child welfare services and continued court supervision are no longer necessary to protect the child."  (See *Destiny D.*, *supra*, 15 Cal.App.5th at pp. 206 & fn. 7, 211.)

the b-2 count," she concedes "[DCFS] is correct that mother has not challenged the jurisdictional findings on appeal." We thus accept the juvenile court's jurisdictional findings in assessing the propriety of the orders adjudicating the children dependents of the court.[8]

Because the juvenile court found the children were persons described by section 300, subdivision (b)(1), section 360 required the court to undertake one of the following courses of action: "in addition to or in lieu of adjudicating the child[ren] . . . dependent child[ren] of the court," appoint a legal guardian for them;

---

[8] Mother contends that "[t]he b-1 [count] would have [withstood an appellate challenge] because mother admitted that she and [A.F.] did in fact test positive for drugs upon the child's birth and the evidence indicated that was so," and "[d]espite the [supposed] inaccuracy of the b-2 count as of December 3 [citation], the b-2 count would have been nonjusticiable on appeal." We express no opinion on whether mother could have successfully challenged count b-1 on appeal. Even if count b-1 were unassailable, as mother contends, because she and A.F. tested positive for methamphetamine and amphetamine upon A.F.'s birth, mother could have asked us to exercise our discretion nonetheless to review count b-2, which alleged that mother's substance abuse posed a substantial risk of serious physical harm to the children under section 300, subdivision (b)(1). (See *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 [noting that we "retain discretion to consider the merits of a parent's" challenge to a jurisdictional finding, and that we "often do so when [it] . . . 'serves as the basis for dispositional orders that are also challenged on appeal' "].) Mother makes no attempt to invoke our discretion to review count b-2, even though mother argues tacitly that the dependency declaration is a "dispositional order" and that the propriety of that ruling hinges on whether the juvenile court had "legitimate concerns for the children's well-being."

"without adjudicating the child[ren] . . . dependent child[ren] of the court," order that services be provided to the family and place the children and the parents under the supervision of a social worker for a period of time; and adjudge the children to be dependents of the court.  (See § 360, subds. (a)–(b), (d); see also *L.W.*, *supra*, 32 Cal.App.5th at p. 851 ["After the juvenile court finds jurisdiction pursuant to section 300, it must 'adjudicate the child a dependent unless the severity of the case warrants nothing more than [the child welfare a]gency's supervision of family maintenance services. . . .' [Citation.]"].)  Mother does not argue that, in lieu of issuing an order declaring the children dependents, the juvenile court should have established a legal guardianship over the children or offered services to the family under the supervision of a social worker.  Accordingly, she has not shown the juvenile court abused its discretion in making its dependency findings.

Mother nonetheless insists a "child cannot be found a 'dependent' of the state" "[u]nless [the] child is placed in foster care."  A juvenile court may declare a child a dependent without placing him or her in foster care.[9]

---

[9] (See *Destiny D.*, *supra*, 15 Cal.App.5th at p. 207, fn. 8 [noting that a juvenile court has the authority to "permit[ ] a parent or guardian to retain custody of a dependent child subject to its supervision"]; § 364, subd. (a) [prescribing procedures that govern when "an order is made placing a child under the supervision of the juvenile court pursuant to Section 300 and . . . the child is not removed from the physical custody of his or her parent or guardian . . . ."]; Cal. Rules of Court, rule 5.695(a)(5) ["At the disposition hearing, the court may:  [¶] . . . [¶] . . . Declare dependency, permit the child to remain at home, and order that services be provided."].)

In sum, mother has failed to satisfy her burden of showing that the juvenile court erred by adjudging A.R., L.F., and A.F. to be dependents.

## DISPOSITION

We affirm the orders declaring A.R., L.F., and A.F. dependents of the juvenile court.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.