Filed 2/13/26  In re A.L. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.L., et al., Persons Coming Under the Juvenile Court Law. | B345506 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Superior Court No. 24CCJP03169A-E |
| Plaintiff and Respondent, | |
| v. | |
| Y.L., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Alik S. Ourfalian, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

A mother of five children challenges orders assuming jurisdiction over three of the children and removing all of them from her custody. We affirm. Statutory references are to the Welfare and Institutions Code.

I

Because only the mother appealed, we focus on facts concerning her.

The children came to the attention of the Los Angeles County Department of Children and Family Services in August 2024 after the mother's boyfriend (W.R.) stabbed the mother twice in her thigh outside her home and threatened her with a bullet to the head. Police arrested W.R., who later admitted the stabbing and methamphetamine use. W.R. is the father of the mother's two youngest children, who were 18 months and one month old and were in the home at the time of the stabbing.

The mother's three oldest children are all teenagers. The father of these children is R.L. He and the mother were divorced, and they shared custody of their three children. The children alternated between their parents' homes each week.

The Department's investigation revealed earlier acts of violence by W.R. Once, he threw a brick into the mother's home, hitting one of the children. He vandalized this home. He shot the maternal grandfather's truck with a BB gun while the mother and one child were inside it. He punched the mother in the head once and grabbed her by the hair when she was pregnant.

There were prior dependency referrals from 2023 involving violence by W.R. and drug use by the mother. In March 2023, one of the children reported finding "a crack pipe with crack in it, a lighter and utensils" in the bathroom of the mother's home.

2

After the current referral, the mother admitted using methamphetamine *in the past*—including while she was pregnant. She said she attended a rehabilitation program. She acknowledged W.R. also has a history of methamphetamine use. But she denied she had used drugs with W.R. and denied she was using anymore. She also declined a drug test.

Then the mother switched course. She admitted she had relapsed and she had used methamphetamine after the stabbing in August and September 2024, while her children were in her care. The mother tested positive for amphetamine and methamphetamine and voluntarily entered an inpatient drug treatment center while the case was pending.

According to R.L., the mother "uses drugs" and "has gone to rehab a few times." The mother "developed a pattern of being arrested, going to rehab and relapsing." Her drug use was the reason they separated, he said. Records show the mother had four substance-related charges and/or convictions between 2017 and 2022.

At the October 2024 detention hearing, the juvenile court detained all five children from the mother. The court released the oldest three to their father and the youngest two to the maternal grandfather.

Ahead of the adjudication, the mother completed her inpatient drug treatment program and enrolled in an outpatient program. She participated in services beyond treatment as well. She tested negative 11 times in a three-month period before the hearing.

At the combined adjudication and disposition hearing in February 2025, the juvenile court sustained allegations of domestic violence between the mother and W.R. and substance

abuse by both. The court declared all five children dependents. It decided to award R.L. sole physical custody and joint legal custody of his three children and to terminate jurisdiction as to these children. The court also removed the two youngest children from parental custody and ordered reunification services for the mother.

## II

On appeal, the mother challenges both jurisdictional and dispositional rulings.

We uphold jurisdiction and removal orders supported by substantial evidence and view the evidence favorably to the Department. (*In re J.C.* (2014) 233 Cal.App.4th 1, 5 (*J.C.*); *In re V.L.* (2020) 54 Cal.App.5th 147, 154, 156 (*V.L.*).) When reviewing removal orders, we consider that they require clear and convincing evidence at the juvenile court. (*V.L.*, *supra*, 54 Cal.App.5th at pp. 154–155.)

Substantial evidence supports the orders challenged here. We take each of the mother's challenges in turn.

## A

The mother does not contest jurisdiction for her two youngest children.

Relying on *In re A.G.* (2013) 220 Cal.App.4th 675 (*A.G.*), she argues the juvenile court should have dismissed the petition as to the three oldest children because they were safe with their father and faced no ongoing harm at the time of the hearing.

*A.G.* is distinguishable. The mother there had a grave mental illness and largely stayed in her bedroom. (*A.G.*, *supra*, 220 Cal.App.4th at pp. 683–684.) The father had shown "remarkable dedication" to their children and ensured there always was an adult supervising them, other than the mother.

4

The father slept in the bedroom with the children, with the door locked. He temporarily moved out of the family home to protect the children from the mother. The appellate court concluded it was error to sustain a petition based on the mother's inability to care for the children, as the father always cared for them properly and was "able to protect them from any harm from Mother's mental illness." (*Ibid.*)

This case is different. The father lived separately from the mother and had custody of the children half the time. The mother had custody the rest of the time. She admits relapsing after the violent episode giving rise to this case, yet she denied failing to protect the children. The mother had a history of substance use and relapse. The older children knew of her past drug use. One of them reportedly found a crack pipe with residue on it.

While the mother's voluntary return to treatment and negative tests while undergoing this treatment are commendable, her relapse history made it reasonable to conclude her substance use issues were unresolved and there remained a substantial risk of serious physical harm to all of the children. (See § 300, subd. (b)(1); see also *J.C.*, *supra*, 233 Cal.App.4th at pp. 6–7 [seven months of sobriety did not eliminate the risk of relapse, given the father's years-long struggles with drug abuse and his prior stint in a drug treatment program].)

R.L.'s right to custody of the three oldest children half the time did not remove this risk. As of the adjudication hearing, no change in the custody arrangement was imminent and nothing restricted the mother's right to the children 50% of the time. "Nothing in *In re A.G.*—or either of the cases on which it relied— purported to authorize a juvenile court to skip the evidentiary

5

hearing on jurisdiction or to apply a rule of abstention just because a nonoffending parent could gain custody of the child in an ongoing family court proceeding." (*In re Nicholas E.* (2015) 236 Cal.App.4th 458, 465.)

The mother's reliance on *In re A.J.* (2013) 214 Cal.App.4th 525 (*A.J.*) is puzzling, as that case affirmed a juvenile court that assumed jurisdiction and later terminated it after placing the child with her nonoffending father. (See *id.* at pp. 527, 532–535.) *A.J.* bolsters the propriety of the court's actions here. (See also *In re Destiny D.* (2017) 15 Cal.App.5th 197, 211 [juvenile court has discretion to terminate jurisdiction at the disposition hearing where child welfare services and continued court supervision are not necessary to protect the child].)

Because substantial evidence supports the substance abuse allegation against the mother, we need not address the other bases for jurisdiction. (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [appellate court can affirm the finding of jurisdiction if any one of the statutory bases in the petition are supported by substantial evidence].)

B

The mother's dispositional challenge also fails.

As to the three oldest children, the mother simply claims the disposition cannot stand with the jurisdictional findings reversed. Jurisdiction was proper, however.

As to the two youngest children, the mother maintains it was not necessary to remove the children to protect them: W.R. was behind bars serving a six-year sentence, and a ten-year protective order shielded the children from him. Regarding her substance use, the mother emphasizes she immediately took accountability and action by entering a treatment center,

6

engaging in other services, and cooperating with the Department; then she consistently tested negative.

As we explained in the last section, the mother's recent substance use and her history of substance abuse and relapse reasonably led the juvenile court to doubt the efficacy of these steps, to view this problem as unresolved, and to conclude the danger to the children remained. (See *J.C.*, *supra*, 233 Cal.App.4th at pp. 6–7 [removal proper where the father had a history of drug abuse but had been drug free for seven months and had completed treatment and services].)

The mother rightly concedes her past conduct is relevant.

Further, a parent's willingness to participate in services "is merely conflicting evidence regarding the risk" the parent poses to a child, which "must be disregarded" under the substantial evidence test. (*V.L.*, *supra*, 54 Cal.App.5th at p. 157; see also *id.* at p. 159 ["even though father may well have made progress with his services, we cannot second-guess an order supported by substantial evidence"].)

The mother maintains there were options short of removal, such as allowing her to stay with the children in the maternal family's home. But there was no assurance the children would remain safe there. Both children were under two years old at the time of disposition and needed constant care and supervision. The maternal family knew of the mother's drug use, and the problem persisted while the mother and children lived with them.

Rejecting this alternative to removal was not error. (See *J.C.*, *supra*, 233 Cal.App.4th at pp. 6–7.)

The juvenile court reasonably concluded the mother posed a substantial danger to the health and safety of the two youngest children and there were no reasonable means to protect them

7

short of removal.  (See § 361, subd. (c)(1); *V.L.*, *supra*, 54 Cal.App.5th at pp. 156–157.)

## DISPOSITION

We affirm the jurisdictional findings and dispositional orders.


WILEY, J.

We concur:


STRATTON, P. J.


VIRAMONTES, J.