Filed 9/16/22  In re Esmeralda R. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Esmeralda R. et al., Persons Coming Under the Juvenile Court Law. | B314504 (Los Angeles County Super. Ct. No. 17CCJP00149) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLINA R.,<br><br>        Defendant and Appellant,<br><br>NOE R.,<br><br>        Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nichelle L. Blackwell, Juvenile Court Referee. Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant Carolina R.

Jack A. Love, under appointment by the Court of Appeal, for Respondent Noe R.

_____

Carolina R. (Mother) appeals from a juvenile court order terminating dependency jurisdiction and entering a juvenile custody order under Welfare and Institutions Code section 362.4, subdivision (a).[1] The juvenile custody order granted Noe R. (Father) sole physical custody of 12-year-old Esmeralda R. and seven-year-old Anthony R. with monitored visits for Mother, and joint legal custody with Father having tie-breaking authority. Mother contends the juvenile court abused its discretion in terminating jurisdiction at the disposition hearing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Prior Dependency Case*

On September 8, 2017 the Los Angeles County Department of Children and Family Services (Department) filed a petition on behalf of eight-year-old Esmeralda, three-year-old Anthony, and

---

[1]    Further statutory references are to the Welfare and Institutions Code.

2

their nine-year-old half-sister, Hazel A.,[2] based on Mother's and Father's substance abuse. On January 26, 2018 the juvenile court sustained the allegations Mother had a history of substance abuse, including methamphetamine, and Mother and Father were under the influence of alcohol while caring for the children. The court declared the children dependents of the court, removed them from the parents' custody, and ordered the parents to participate in a drug/alcohol program (Mother) and alcohol program (Father), weekly testing, parenting classes, and individual counseling. On December 11, 2019 the court terminated jurisdiction with a juvenile custody order granting Mother and Father joint legal and physical custody of Esmeralda and Anthony. Under the custody order, Father had physical custody of the children from Tuesday evening until Sunday morning, with Mother having custody the remaining time.

B.    *The Referral and Investigation*

On May 3, 2021 the Department received a referral alleging Father, who was separated from Mother, suspected Mother was using drugs and exposing the children to drugs. Father requested the children's doctor order drug testing for the children. Esmeralda's April 30 urine analysis was positive for opiates and marijuana; Anthony's test was negative. Father reported Esmeralda had been "defiant, rebellious, and too hyper" for the past few months. The paternal grandmother, who took

---

[2]    On February 5, 2018 the juvenile court terminated jurisdiction over Hazel with a custody order giving her father (Edgar A.) sole legal and physical custody. Mother's appeal involves only Esmeralda and Anthony.

3

care of the children when Father was at work, confirmed Esmeralda had recently become more defiant, and when Esmeralda returned from Mother's home, she was more aggressive and at times disrespectful.

Father suspected Mother was using methamphetamine because he noticed starting in September 2020 that she quickly lost weight and looked unhealthy. The social worker observed Mother was "very skinny and appeared unhealthy" with dilated pupils, but Mother was able to speak clearly. Mother questioned the accuracy of Esmeralda's test results and told the social worker she suspected Esmeralda could have obtained marijuana from Father. Mother admitted she used methamphetamine on May 2, 2021 after she ended her relationship with her boyfriend, Jose I.

During the social worker's May 3, 2021 interview of Esmeralda, Esmeralda stated she smoked marijuana at Father's house. Esmeralda claimed she would sneak inside Father's bedroom when he was not home and smoke the marijuana he kept in his room. But in a second interview two days later, Esmeralda teared up and admitted she had lied during the first interview. Esmeralda stated Father did not have marijuana in the home, but he used to smoke marijuana at a friend's house on weekends. Esmeralda and the friend's daughter would smoke the "'blunt'" when Father and his friend were not looking. Esmeralda reported the last time Father, his friend, and their families got together was for a fishing trip at the end of 2020.

Esmeralda disclosed that she first tried marijuana in the summer of 2020 at Mother's home, where Mother provided her with the marijuana. According to Esmeralda, Mother also provided Hazel with marijuana, and "Hazel has been smoking for

4

a long time."  Esmeralda stated, "'[W]hen Jose is home we all smoke together but normally it's just my mom, Hazel and me.'"  Esmeralda reported Mother had a light blue pipe and a clear bong with a "'glow in the dark'" mouthpiece.  Anthony was sometimes present when Mother, Hazel, and Esmeralda smoked marijuana in Mother's home.  When the social worker asked if Mother had offered marijuana to Anthony, Esmeralda answered, "'[N]o, not yet because my mom said he's too small.'"  Esmeralda explained she lied during the initial interview because Mother instructed Esmeralda and Anthony not to disclose what was happening in Mother's home.  Esmeralda added, "'I knew you guys were going to take me away from my mom and I didn't want that to happen.'"  Esmeralda felt safe living with Father, but she wanted to continue having visits with Mother.

The social worker reported that in her May 3 interview with Anthony, Anthony appeared nervous and "may have been coached given he was in the car with mother while [the social worker] interviewed Esmeralda and Hazel."  Anthony stated Mother smoked cigarettes outside the home, but he did not know whether Hazel or Esmeralda smoked.  Anthony felt safe with Father, and he did not like visiting Mother.  In a May 5 interview, however, Anthony reported Mother, and sometimes Hazel and Esmeralda, smoked cigarettes.  He also saw Mother, Esmeralda, and Hazel smoking out of a light blue pipe.  He denied witnessing Father drink alcohol or use drugs.

After interviewing Esmeralda and Anthony, the social worker called Mother, who claimed Esmeralda had lied about Mother giving her marijuana.  Mother reported she caught Hazel and Esmeralda using Mother's vape device two weeks earlier and took it away from them.

Both Mother and Father agreed to submit to drug tests. Father's May 5, 2021 drug test was negative for all substances. Mother's May 6, 2021 drug test was positive for marijuana.

C.     *The Dependency Petition and Detention*

On May 14, 2021 the Department filed a dependency petition on behalf of Esmeralda and Anthony under section 300, subdivisions (a), (b)(1), and (j), alleging Mother and Jose had a history of engaging in violent altercations in the presence of the children; Mother had a history of substance abuse and was a current abuser of methamphetamine and marijuana; and Mother caused Esmeralda and Hazel to consume marijuana in the presence of Mother and Anthony and to provide false statements to the social workers.

At the May 19, 2021 detention hearing, Father's attorney noted Father was a nonoffending parent and requested "the court . . . close the case at disposition." The juvenile court detained Esmeralda and Anthony from Mother and released them to Father. The court ordered Mother to participate in a substance abuse program, weekly random drug testing, a parenting class, domestic violence for victims, and individual counseling. The court granted Mother monitored visits for six hours per week with Father "not to monitor or be present during mother's visits."

D.     *The Jurisdiction and Disposition Report*

According to the July 22, 2021 jurisdiction and disposition report, Mother tested positive for marijuana metabolites on May 6 and June 17, 2021, and amphetamine and methamphetamine on June 24 and 28, 2021. Mother told the dependency

6

investigator she only used methamphetamine when she broke up with Jose in May 2021 and again in June because she missed her children. Mother said she used marijuana to help her with insomnia and body aches. She smoked marijuana from a vape pen or pipe outside at night while the children were asleep. Mother had not yet enrolled in any services, but she was willing and motivated to enroll in a substance abuse program.

Mother again denied giving marijuana to Esmeralda and Hazel. Mother explained, "'I would always hide my marijuana vape pen in my room so my kids wouldn't find it.'" Mother described one occasion when she came home and found half of the marijuana in her vape pen was gone. Mother asserted Anthony said Hazel and Esmeralda used the marijuana. Mother continued, "'I went over to [Hazel and Esmeralda] and I told them that it wasn't okay for them to use marijuana. Hazel told me her boyfriend introduced her to it. I think Esmeralda smoked it because of peer pressure from Hazel. That was the only incident where they smoked it. Since then I hid my vape pen somewhere else. I haven't observed them to be under the influence of marijuana any other time. I did not introduce it to them or just let them smoke marijuana.'"

In a July 5, 2021 interview with the dependency investigator, Esmeralda denied Mother provided her with marijuana, explaining she and Hazel would steal marijuana from Mother's room to smoke. Further, Mother was never under the influence of marijuana with the children. Esmeralda explained, "'When I was at my mom's house she would often leave for hours at a time. . . . Hazel and I would smoke her vape pen and then we would use the air freshener spray and spray the whole house so my mom couldn't tell we were smoking her marijuana vape

pen. She eventually found out but she didn't do anything about it, she would just hide her vape pen somewhere else in the house, but we would always find it. My mom couldn't do anything to stop us, we could smoke it whenever we wanted to.'" Esmeralda said she was "'doing fine'" with Father but wanted to live with Mother.

Father stated he knew Mother was abusing drugs and trying to hide it. He added, "'I need to keep my children safe, even if it means keeping them safe from their own mother. I know [the Department] has brought up issues about my substance abuse history but that is in the past. I addressed my issues and reunified with my kids.'" Father acknowledged Esmeralda was smoking marijuana at Mother's home, Mother was coaching her, and Esmeralda was having a difficult time being separated from Mother; as a result, Esmeralda "'really needs to stay in therapy to cope with all of this.'" As of July 2021 Esmeralda and Anthony were receiving individual counseling, and Esmeralda had started behavioral therapy.

E. *The Jurisdiction and Disposition Hearing*

At the July 22, 2021 jurisdiction and disposition hearing, minor's counsel urged the juvenile court to sustain the allegations as to Mother except the allegation under section 300, subdivision (a), and to terminate jurisdiction. Father's attorney joined in the request to terminate jurisdiction, and he requested the court enter a juvenile custody order granting Father sole legal and physical custody. The attorneys for Father and the children noted Father was nonoffending, Mother tested positive for methamphetamine twice and had not enrolled in any programs, and the children had access to marijuana (whether

8

provided by Mother or found in Mother's home).  Further, the children felt safe with Father.  Mother's attorney argued with respect to the substance abuse allegations Mother never provided the children with marijuana and Mother was not aware Esmeralda was smoking.  Mother's attorney requested the court not terminate jurisdiction because Mother wanted an opportunity to reunify with her children.  The Department requested the court sustain the allegations under subdivisions (b)(1) and (j), but as to disposition it requested the court leave the case open to give Mother an opportunity to reunify.  In the alternative, the Department requested the court grant Father sole legal and physical custody of the children because Esmeralda was comfortable living with Father, Anthony preferred to live with Father, the parents had a contentious relationship, and Mother previously coached the children to lie.

The juvenile court sustained the domestic violence and substance abuse allegations under section 300, subdivisions (b)(1) and (j), including the allegations Mother provided marijuana to Esmeralda and Hazel and caused Esmeralda to provide false statements to the social workers.  The court dismissed the domestic violence allegation under section 300, subdivision (a).  The court explained, "I do agree that the mother has been rather deceptive in this case.  She coached the child Esmeralda to lie and say that the father was the one who was supplying the marijuana to the child.  And then this child gave this lengthy story to the emergency social worker about the father's drug use and that the father is the one that showed her how to use marijuana and she used it when her father wasn't there.  But then I guess her conscience got the better of her and Esmeralda came clean and told the truth.  Later on when she was re-

9

interviewed by the emergency social worker, she stated that she got the marijuana from the mother, that mother offered it to her, [and] the mother asked her if she wanted to try it. She tried it, she's used it, and she used it with her mother. She also stated that she and Hazel both have used it with the mother, [and] the mother['s] ex-boyfriend Jose [I.] and that sometimes they used it when Anthony was around and other times when Anthony was not around. . . . [¶] . . . [¶] Esmeralda is only what, 13 years old. And it's unfortunate to get a child started on drugs this early in life, and I'm very saddened to hear this and I'm very concerned that this could occur also to Anthony."

The juvenile court observed that Mother admitted she started using methamphetamine when she was 15 after witnessing her mother being beaten by maternal grandmother's partner, and again when she broke up with Jose. The court found that "any time there is some trauma in the mother's life, it triggers her to use. Which means she has no coping skills, which means she hasn't developed how to get over issues that are not going her way or are traumatic and instead she self-medicates with methamphetamine."

The court found by clear and convincing evidence removal was necessary to protect the children and there were no other reasonable means to protect them. The court expressed a concern that Esmeralda stated Anthony had not "'yet'" used marijuana. The court found, "[Esmeralda] said that her mother stated that the child is not old enough yet. And that is a concern very much to this court, that the mother would then corrupt the child Anthony and let him get started. Additionally, Anthony himself stated that he doesn't feel safe in the mother's care, he is happy in the father's care and wants to remain there. While I see that

Esmeralda wants to return back to Mother, I question her motive. I question why she wants to return and it's probably because she feels she can use marijuana anytime she wanted in the mother's care. And this is not good and I'm not going to allow that to happen, at least on this court's watch."

The court terminated jurisdiction with a juvenile custody order, explaining, "I find there's no basis to maintain jurisdiction in this matter because Father has shown himself to be extremely protective over his children. He's the one that got the children drug-tested because he thought perhaps the mother was using drugs and allowed these kids to get a hold of it. . . . They were tested and Esmeralda's urine came back positive for marijuana and opiates. So he's done everything a parent should do to protect his children. And I have no doubt that he would continue to do this without [the Department's] intervention. So the court need not keep this case open, because I find under Welfare and Institutions Code [sections] 361.2 and 362.4 that they are safe in the father's care, and, therefore, I am placing the children in Father's care, removing them from Mother."

The court entered a juvenile custody order granting sole physical custody to Father with Father providing the primary residence. However, the court ordered joint legal custody with Father "to have tie-breaking authority if [Mother] is not willing, not able or not cooperative in making legal decisions, the Father can make them solely without Mother. But he still must at least take the step of consulting Mother and informing Mother about legal decisions." The court added, "The reason for this order and the order that Mother will have monitored visits of six hours a week is because Mother needs to complete a full drug abuse treatment program with random testing, a domestic violence

11

program for victims, parenting class[es] and individual counseling. Those are the case programs that the mother would have to complete in order to show she can amend and modify this custody order in family court."

Mother timely appealed.[3]

## DISCUSSION

"'Typically, once the child has been adjudged to be a dependent child pursuant to section 360, subdivision (d), the juvenile court determines what services the child and family need to be reunited and free from court supervision. [Citations.] The court then sets a review hearing, which must be held within six months, to evaluate the family's circumstances and decide whether continued dependency jurisdiction is necessary.' However, because the Legislature has 'grant[ed] the juvenile court broad authority to enter orders to protect a dependent child and to reunite the family and terminate jurisdiction as quickly as possible' [citation], the court has discretion at the close of the disposition hearing 'to terminate dependency jurisdiction when the child is in parental custody and no protective issue remains.'" (*In re C.S.* (2022) 80 Cal.App.5th 631, 635-636, fn. omitted; accord, *In re D.B.* (2020) 48 Cal.App.5th 613, 624.)

An order terminating jurisdiction is reviewed for an abuse of discretion. (*In re C.S., supra*, 80 Cal.App.5th at pp. 635, 637;

---

[3] Mother states in her notice of appeal that she is appealing the jurisdiction and disposition orders, but in her opening brief she only contends the juvenile court abused its discretion in terminating jurisdiction at the disposition hearing.

*In re D.B., supra*, 48 Cal.App.5th at p. 624; *In re C.W.* (2019) 33 Cal.App.5th 835, 863 ["We review a juvenile court's decision to terminate jurisdiction and to issue an accompanying exit custody order for abuse of discretion, and may not disturb such rulings unless the court made an """"arbitrary, capricious, or patently absurd determination."""""].)

The juvenile court did not abuse its discretion. Esmeralda and Anthony were placed in danger by Mother's abuse of marijuana and methamphetamine, as well as Mother's provision of marijuana to Esmeralda. Mother tested positive for marijuana metabolites on May 6 and June 17, 2021, and methamphetamine and amphetamine on June 24 and 28, 2021. At the time of the disposition hearing, Mother had not enrolled in a substance abuse program or any other services that the court had ordered. Further, Mother continued to deny she provided Esmeralda with marijuana or smoked marijuana in Anthony's presence. On appeal, Mother claims "neither parent, nor [Esmeralda] could explain the cause or source" of Esmeralda's May 2021 positive test for marijuana and opiates. But 12-year-old Esmeralda disclosed Mother introduced her to marijuana by providing her the drug at Mother's home in the summer of 2020. And Mother, Hazel, and Esmeralda smoked marijuana together, sometimes in Anthony's presence. When the social worker asked Esmeralda if Mother had offered marijuana to Anthony, Esmeralda answered not "'yet'" because Mother said he was too young. The juvenile court was rightly concerned that Mother, who supplied Hazel and Esmeralda with marijuana, would offer marijuana to Anthony when he was older. In addition, Mother instructed Esmeralda and Anthony to tell the social worker that Mother and Esmeralda did not use marijuana in the home.

13

By awarding Father sole physical custody and limiting Mother to monitored visits, the juvenile court protected the children from harm. Father was nonoffending, and as the court noted, he was very protective of the children. Father had the children tested for drugs because he suspected Mother was using drugs and he was worried Mother had exposed the children to drugs. Father recognized he needed to keep the children safe from Mother and acknowledged Esmeralda needed to continue individual counseling and behavioral therapy. Thus, court supervision was not necessary to protect the children or ensure Esmeralda received services.

Mother contends the juvenile court should have continued jurisdiction to provide Mother with services. But Mother admits she was not entitled to family reunification services because the children remained with a custodial parent. (See § 16507, subd. (b) ["[f]amily reunification services shall only be provided when a child has been placed in out-of-home care, or is in the care of a previously noncustodial parent under the supervision of the juvenile court"]; *In re C.S., supra*, 80 Cal.App.5th at p. 636 [mother was not entitled to reunification services where child remained with custodial parent]; *In re Destiny D.* (2017) 15 Cal.App.5th 197, 212 [father was not entitled to reunification services because the child remained with custodial parent].)

Mother alternatively argues the juvenile court should have continued jurisdiction and ordered the Department to provide her with enhancement services, including a substance abuse program. ""Enhancement" services are "not designed to reunify the child with that parent, but instead to enhance the child's relationship with that parent by requiring that parent to address the issues that brought the child before the court.""" (*In re C.S.,*

*supra*, 80 Cal.App.5th at pp. 636-637; *In re Destiny D., supra*, 15 Cal.App.5th at pp. 212-213.)  "An order for enhancement services is subject to the court's discretion."  (*C.S.*, at p. 637; *Destiny D.*, at p. 213; see § 362, subd. (a).)  At the May 19, 2021 detention hearing, the juvenile court ordered Mother to participate in a substance abuse program, weekly random drug testing, parenting classes, a domestic violence for victims program, and individual counseling.  But as of July 2021, Mother still had not yet enrolled in any services.  Moreover, Mother continued to use drugs after the detention hearing, testing positive for methamphetamine and amphetamine on June 24 and 28, 2021.

Further, the juvenile custody order provided the same six hours of monitored visits the court had ordered at the detention hearing.  In entering the juvenile custody order, the juvenile court made clear it intended that Mother could seek to modify the custody order in family court once she completed a full drug abuse treatment program with random testing and the other required classes and counseling.  Given that Father was nonoffending, the children were safe in his care and receiving necessary therapy, and Mother still had not enrolled in a substance abuse program or other services (but continued to have that opportunity), it was not an abuse of discretion for the court to terminate dependency jurisdiction.

## DISPOSITION

The order terminating dependency jurisdiction is affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.