Filed 8/28/23  In re Dominic R. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re DOMINIC R., a Person Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID S.,<br><br>Defendant and Appellant. | F085554<br><br>(Super. Ct. No. JJV073911A)<br><br><br>**OPINION** |

## THE COURT*

APPEAL from an order of the Superior Court of Tulare County.  John P. Bianco, Judge.

Gino de Solenni, under appointment by the Court of Appeal, for Defendant and Appellant.

Jennifer M. Flores, County Counsel, and Abel C. Martinez, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Hill, P. J., Levy, J. and DeSantos, J.

Appellant David S. (father) is the father of four-year-old Dominic R. (the child) who is the subject of this dependency case. Father challenges the juvenile court's order issued at an 18-month review hearing held pursuant to Welfare and Institutions Code section 366.22.[1] Father contends the juvenile court erred when it terminated father's family reunification services after placing the child in the custody of his mother, Alejandra R. (mother). Finding no error, we affirm.

## PROCEDURAL AND FACTUAL SUMMARY

In June 2021, the Riverside County Department of Public Social Services (department) received an immediate response referral after the birth of the child's half sibling, M.R. Mother did not have provisions for M.R. and had untreated mental health conditions. A nurse at the hospital had to feed M.R. because mother kept insisting M.R. was not hungry. A social worker from the department responded to the hospital and interviewed mother. Mother was currently living with father and the child, and she disclosed a history of mental abuse by father.

The child's maternal grandparents had guardianship of the child's older sibling, and mother previously lived with the maternal grandparents in Tulare County. Father gained full custody of the child due to reports of drug use by mother, however, mother moved in with the child and father in February 2021. Mother also disclosed past domestic violence between her and father, which involved physical altercations. She claimed there were no physical altercations in the last five years. Mother refused to provide the social worker with contact information for father when she explained the department's need to conduct a home assessment.

The social worker attempted to reach father through multiple phone numbers until she received a return call from father. Father initially told the social worker that she would not be allowed in his home, and he explained that M.R. was not his child.

---

**1** All further statutory references are to the Welfare and Institutions Code.

However, he eventually allowed her access to the home that same evening. Father denied any history of domestic violence with mother, and he had no concerns with mother's ability to care for the child or M.R. Father's residence was noted as clean and well kept, but there were no baby supplies for M.R. in the home. The social worker noted that father changed subjects quickly and avoided answering several questions. The social worker observed the child watching television with no visible marks or bruises, and there were age-appropriate provisions for him in the home.

On the following day, the social worker spoke with a paternal great-aunt, who had concerns of ongoing domestic violence between mother and father. There were times mother called the paternal great-aunt while the parents were arguing and mother was scared. The paternal great-aunt believed father was showing early signs of paranoia and had been diagnosed with oppositional defiant disorder. Father stopped taking medication for his symptoms of paranoia once he turned 18.

The social worker conducted a follow-up interview of mother in the hospital later that day. Mother was upset because father told her to leave his residence. Mother and father had been arguing, and she did not know where she was going to live. The maternal grandmother informed mother that she could pick up M.R., and father told mother to move in with the maternal grandmother. Mother was unable to confirm that she and M.R. would be safe in father's home due to ongoing arguments. Father would not allow mother to see the child if she moved in with the maternal grandmother. During the interview, father and mother had an argument over the phone. Mother concluded the interview by informing the social worker that she would move in with father upon discharge and contact the maternal grandmother if the environment was unsafe.

The maternal grandmother confirmed a significant history of domestic violence between mother and father, but she did not know where they were living. The reason for the legal guardianship of mother's older child was reportedly due to father hitting the older child and being aggressive with mother. Mother contacted the maternal

3.

grandmother to report two domestic violence incidents in the days following mother's return to father's home with M.R.

The social worker followed up at father's home on June 14, 2021. Father did not allow mother to answer any of the social worker's questions, and he showed the social worker a bassinet, diapers, wipes, and formula for M.R. Father denied any domestic violence in the home, but he acknowledged that the parents fight. He claimed he was a different person from five years ago when both parents had " 'anger issues' " and domestic violence in their relationship. Father told the social worker that the department needed to close its investigation, and he blamed the maternal grandmother for making the referral.

The department requested a protective custody warrant for the child and M.R. (collectively, the children), which was issued on June 15, 2021. Father initially refused to allow the social worker and law enforcement in the home to execute the protective custody warrant. However, he eventually allowed them into the home, and the children were taken into protective custody. After the children's removal, father made numerous threats to sue the social worker and complain to her superiors.

On June 18, 2021, the department filed an original petition alleging the children were described under section 300, subdivision (b)(1). The petition alleged the children were at substantial risk of suffering serious physical harm as a result of the parents' untreated mental health issues and ongoing domestic violence relationship. At the detention hearing held on June 21, 2021, the juvenile court ordered the children detained from mother and father and set a jurisdiction hearing for July 13, 2021.

The department's jurisdiction and disposition report, filed on July 8, 2021, recommended that the allegations in an amended petition be found true, the child be removed from the custody of both parents, and family reunification services be provided

4.

to mother and father for the child.[2]  The children were placed with a maternal relative in Tulare County on July 7, 2021.  Both parents intended to move to Tulare County to be closer to the children and maternal family members.

The report detailed previous child welfare referrals involving the child and his older sibling.  In May 2018, a referral was substantiated after the child's older sibling reported father smacked him in the mouth.  The maternal grandparents obtained guardianship of the older sibling because of their concerns that father was abusive.  The six referrals alleging neglect or abuse of the child that took place from February 2020 to January 2021 involved allegations that mother and father engaged in domestic violence, mother cared for the child while under the influence of a controlled substance, and mother neglected the child during her supervised visits.

During interviews for the social study, mother explained that she and father had been in a relationship for six years.  Mother and father both denied that there was any domestic violence in their relationship.  Father denied having any mental illness, and he claimed that his aunt wanted him to take medication as a child to get additional benefits.  He felt there was nothing wrong with the family and denied needing any referrals for services.  The proposed case plan for father required him to complete a domestic violence program, individual and group therapy, and a parenting education program.

At the initial jurisdiction hearing, mother and father requested a contested hearing.  On August 25, 2021, the department filed an addendum report, which indicated mother was living with a family member in Tulare County and no longer in a relationship with father.  She obtained employment and was participating in therapy and domestic violence classes.

The social worker informed father of the importance of completing parenting classes and therapy, but he claimed he completed those services in the past and would

---

**2**  The amended petition was filed to correct the spelling of M.R.'s name.

provide certificates. Father blamed his past mental health issues and need for medication on abuse he endured while in the foster care system as a child. He refused to accept the department's bus pass for transportation to visits with the child, and he initially declined to participate in video visits. Father claimed mother was still " 'his woman,' " and he intended to marry mother. The relative care provider received excessive phone calls and messages from father that were profane and attacking mother.

On August 27, 2021, father filed various documents with the juvenile court, which alleged violations of his constitutional rights. One document, entitled "Affidavit of Dismissal," demanded that the child be returned to father's custody and the dependency matter be dismissed. At the date set for a contested jurisdictional hearing, father made a request to represent himself, and minor's counsel requested father submit to two psychological evaluations. The juvenile court continued the contested hearing to hold a *Marsden*[3] hearing on September 30, 2021.

In a second addendum report, filed on September 27, 2021, the department recommended that father be denied family reunification services pursuant to section 361.5, subdivision (b)(2) due to mental health issues. Father refused to participate in in-person or video visits supervised by the department because he only wanted to visit either without supervision or with supervision by the care provider. He believed the child was wrongfully removed from his custody, and he did not think he needed any services or psychological evaluations.

On September 30, 2021, the juvenile court held a *Marsden* hearing and denied father's request to represent himself. Father's counsel requested that a guardian ad litem be appointed for father, and the court appointed a guardian ad litem for father after holding a hearing on the issue. The jurisdiction hearing was continued to November 16, 2021, after the court ordered father to participate in two psychological evaluations. The

---

**3**      *People v. Marsden* (1970) 2 Cal.3d 118.

doctors appointed to conduct the psychological evaluations were not provided with contact information for father until November 8, 2021. The evaluations did not take place after multiple attempts were made by one of the doctors to contact father. Father was not in contact with the department or visiting with the child in advance of the continued jurisdiction hearing.

The jurisdiction hearing proceeded on November 16, 2021, with father appearing by telephone. Counsel for the parents entered objections, and the juvenile court found the allegations in the amended petition true and set a disposition hearing for December 9, 2021. At the disposition hearing held on December 10, 2021, father was not present. Father's counsel entered an objection to the recommendation to deny father family reunification services. The court ordered family reunification services to mother and denied family reunification services to father pursuant to section 361.5, subdivision (b)(2). The case was transferred to Tulare County and a transfer-in hearing was set for December 27, 2021.

### Six-Month Review Period

The Tulare County Superior Court accepted the transfer of the case on December 27, 2021, while mother was present and father was not present. A review hearing regarding mother's visits and case plan was set for January 10, 2022, and a six-month review hearing was set for June 6, 2022. In January 2022, mother was participating in individual therapy and domestic violence classes. At the January 10, 2022, interim review hearing, the Tulare County Health and Human Services Agency (agency) was provided with discretion to allow unsupervised visits between the child and mother.

In April 2022, mother had completed her individual therapy and domestic violence classes. Mother was having difficulty completing her parenting class because her teacher was rescheduling class times. Father told the agency social workers that the Riverside County Department of Public Social Services wrongfully removed the child from his

care. The agency was concerned with father's mental health because he was making a variety of accusations against judges and social workers. According to information received by mother, father eventually moved out of state and married another woman. Father appeared via video at an interim review hearing held on April 11, 2022, and he confirmed that he was no longer living in California.

On May 31, 2022, father filed a section 388 petition requesting reunification services and an evaluation for placement. The petition alleged father was visiting with the child and had completed a mental health evaluation. The evaluation was completed through a phone consultation at a behavioral health walk-in clinic. Father reported no history of mental health concerns, psychiatric hospitalizations, or family history of mental illness. A hearing on the section 388 petition was set to take place on the date of the six-month review hearing.

The agency's six-month review report, filed on June 3, 2022, recommended that mother continue to receive family reunification services and father be provided family reunification services pursuant to the request in his section 388 petition. The agency also recommended that mother begin overnight visits with the children and father's visits be supervised at twice per month. Mother continued to participate in her parenting program and was compliant with the components of her case plan. Father was living in Iowa, and he recently started visiting with the child via video on April 29, 2022. The report recommended that father be ordered to participate in a domestic violence assessment and parenting classes as part of his case plan.

On June 6, 2022, the six-month review and section 388 hearing was continued to allow the parties to verify the credentials of the provider who conducted father's psychological evaluation.[4] Prior to the continued hearing, the agency changed its

---

[4] Father's appeal of the juvenile court's order to briefly continue his section 388 petition was dismissed pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835, 844 in case No. F084556. (*In re D.R.* (Nov. 28, 2022, F084556) [nonpub. opn.].)

recommendation as to father, and it requested that father's section 388 petition be denied. The agency did not believe that family reunification services were in the child's best interest due to father's failure to complete an in-person psychological evaluation and demonstration of paranoid and threatening behavior. Father continued to make threats against the relative care provider and sent letters to the Governor of California, President of the United States, and Federal Bureau of Investigation regarding his complaints. The six-month review hearing was held on June 29, 2022. The juvenile court continued mother's family reunification services and set a 12-month review hearing for August 10, 2022.

***Twelve-Month Review Period***

The hearing on father's section 388 petition was continued to July 20, 2022, to allow father to provide verification that he completed a psychological evaluation with a qualified mental health professional. Father completed another evaluation with a licensed mental health counselor, who referred father to individual therapy. Father informed the social worker that he did not want therapy sessions because he was not paranoid, however, he would participate in therapy to regain custody of the child.

At the continued section 388 hearing held on July 20, 2022, the juvenile court provided its tentative ruling that it would grant father's petition because there was no evidence that father would not be able to benefit from reunification services. The section 388 petition was granted and the agency was ordered to prepare a case plan with services to address the mental health and domestic violence allegations that were previously found true. A hearing to adopt the case plan was set to coincide with the 12-month review hearing on August 10, 2022.

The agency's 12-month review report, filed on August 8, 2022, recommended that mother and father both be provided with additional family reunification services through the 18-month period. Mother was arrested after she was involved in a domestic violence incident with a boyfriend. Father was not participating in any services, and he was only

9.

willing to participate in services if the child was returned to his custody at the 12-month review hearing.

The proposed case plan required father to complete a domestic violence batterer's program and mental health services. The social worker sent releases to father via email in order to refer him to a domestic violence batterer's program on August 5, 2022. Father informed the social worker that he was scheduled to begin individual therapy sessions on August 8, 2022. At the 12-month review hearing, the juvenile court adopted the recommended case plan, found the agency had provided reasonable services to mother and father, ordered family reunification services continue for mother and father, and set an 18-month review hearing for December 7, 2022. The court also authorized an evaluation of father's home in Iowa pursuant to the Interstate Compact on the Placement of Children (ICPC).

### Eighteen-Month Review Period

On September 16, 2022, father filed another section 388 petition requesting that the child be returned to his custody and the length of his domestic violence program be reduced from 52 weeks to 12 weeks. The juvenile court set a hearing on the section 388 petition for the date of the 18-month review hearing.

The report for the 18-month review hearing recommended that the child and M.R. be returned to mother's custody with family maintenances services. It also recommended that father's family reunification services be terminated. Mother was participating in overnight visits with the children and scheduled to begin an anger management class. Father had completed eight of the 52 sessions of his domestic violence class and was not participating in mental health services. A letter from the provider of father's domestic violence class indicated he began the class in September 2022 and missed three of the classes. The letter also stated father was being cooperative and participating well.

Father missed the only two appointments scheduled for individual counseling, and he claimed he did not need mental health services. Father claimed that he missed

10.

sessions because he either did not have internet or was unable to open the service provider's link. The evaluation of father's home could not be completed in Iowa as father moved to Nebraska, and he wanted an adoption agency to complete an evaluation of his home because he believed the ICPC evaluation was too "intrusive." There were no concerns reported during father's video visits with the child, and he did not miss any scheduled visits.

An 18-month review hearing was held on December 7, 2022, and father was present via telephone. Father's counsel withdrew the section 388 petition and agreed with the agency's recommendation to place the child with mother. He then requested that father's 52-week domestic violence program be modified to "an anger management class or something that doesn't have a 52-week component to it." Father's counsel also indicated his agreement for father to have electronic communication with the child in mother's home. Counsel for the agency argued that father should not receive additional reunification services based upon his lack of progress. The child's counsel agreed with the agency's recommendation to terminate father's reunification services.

After argument from counsel, the juvenile court adopted the agency's recommendation and ordered that the children be placed in mother's custody with a provision of family maintenance services. The court then noted that father made no progress in addressing his mental health issues and only recently started his domestic violence program. The court proceeded to find that the agency provided father with reasonable services and ordered that father's family reunification services be terminated. The agency was also provided with discretion to increase the frequency of father's video visitation and electronic communication with the child. Father filed a timely notice of appeal on January 9, 2023.

## DISCUSSION

Father contends the juvenile court's finding that the agency provided him with reasonable services is not supported by substantial evidence. Specifically, father argues

11.

that the agency failed to provide him reasonable services because he was required to complete a 52-week domestic violence course in a shortened reunification period.

   A.  *Legal Principles*

   "Family reunification services play a critical role in dependency proceedings. [Citations.]  At the dispositional hearing, the court is required to order the agency to provide child welfare services to the child and his or her parents.  (§ 361.5, subd. (a).)  Services 'may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children.'  (§ 300.2.)  Reunification services should be tailored to the particular needs of the family."  (*In re M.F.* (2019) 32 Cal.App.5th 1, 13 (*M.F.*).)

   At each review hearing, "if the child is not returned to his or her parent, the juvenile court is required to determine whether 'reasonable services that were designed to aid the parent … in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent ….'  (§§ 366.21, subds. (e)(8) & (f)(1)(A), 366.22, subd. (a)(1).)  The 'adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of each case.'  [Citation.]  To support a finding that reasonable services were offered or provided to the parent, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult ….' "  (*M.F.*, *supra*, 32 Cal.App.5th at p. 14.)

   At the 18-month review hearing, "the juvenile court may not set a section 366.26 hearing unless it finds by clear and convincing evidence that reasonable services were offered or provided to the parent."  (*M.F.*, *supra*, 32 Cal.App.5th at p. 14.)  Reunification services are a benefit, and there is no constitutional " ' "entitlement" ' " to child welfare

services.  (*In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1242, citing *In re Joshua M.* (1998) 66 Cal.App.4th 458, 476.)  Furthermore, the resources available to the juvenile court are not unlimited.  (*In re Alanna A.* (2005) 135 Cal.App.4th 555, 566.)

Accordingly, while the statutory scheme generally requires that parents be provided "court-ordered services" beginning with the disposition hearing and ending 12 months after the date the child entered foster care, the Legislature has limited those services to "a maximum time period not to exceed 18 months," which may be extended to 24 months under certain circumstances.  (§ 361.5, subd. (a).)  However, "[t]he reunification period may be as short as six months, and in some dependency cases there may be no reunification period at all.  (See §[§] 366.21, subd. (e), 361.5, subd. (b); *In re Troy Z.* (1992) 3 Cal.4th 1170, 1177.)"  (*In re Zacharia D.* (1993) 6 Cal.4th 435, 446; see also *In re Aryanna C.*, *supra*, 132 Cal.App.4th at pp. 1241–1242 [father's abysmal efforts at reunification supported court's decision to terminate services before expiration of six-month period].)

### B.  *Standard of Review*

"In reviewing the reasonableness of the services provided, this court must view the evidence in a light most favorable to the respondent.  We must indulge in all reasonable and legitimate inferences to uphold the judgment.  [Citation.]  'If there is any substantial evidence to support the findings of a juvenile court, a reviewing court is without power to weigh or evaluate the findings.' "  (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1361–1362.)

### C. *Analysis*

Father complains that the agency failed to provide him reasonable services because he was unable to complete his 52-week domestic violence program before the expiration of the 18-month reunification period.  However, father was initially denied family reunification services at disposition, and he did not request services again until he filed a section 388 petition on May 31, 2022.  The agency was not ordered to implement

13.

a case plan for father until July 20, 2022, which was already 13 months after the child's initial removal. Therefore, father's limited time period to participate in services to address the problems that led to the child's removal was not a direct result of delays by the agency.

In support of his contention, father relies on the case of *In re K.C.* (2012) 212 Cal.App.4th 323 (*K.C.*). In *K.C.*, the father underwent a psychological evaluation required by his case plan. The evaluator identified certain psychological conditions that interfered with his ability to safely parent his children and recommended a pharmacological evaluation. The supervising agency made no attempt to secure the evaluation and delegated the burden of securing the evaluation to the father, "despite the high likelihood that the very issues necessitating treatment would interfere with his ability to obtain it." (*Id*. at p. 330.) The appellate court reversed the juvenile court's order terminating reunification services, concluding it erred in finding reasonable services were provided. (*Id*. at p. 334.)

In the present case, there is no evidence that the agency failed to secure a domestic violence program for father. The juvenile court adopted the agency's recommended case plan on August 10, 2022, and father offered no objection to his requirement to complete a domestic violence batterer's program. The social worker referred father to his domestic violence batterer's program, and father began the program in September 2022. At the time of the 18-month review hearing, father had completed approximately eight of his 52 weeks in the domestic violence batterer's program. However, father had failed to participate in any therapy sessions, and he repeatedly claimed he had no need for mental health services.

The issues father needed to resolve in order to reunify with the child were domestic violence and mental health. Under the circumstances, we cannot find that a batterer's program was unreasonable given the jurisdictional facts involving father's perpetration of verbal and physical domestic violence on mother. The extended length of

14.

the batterer's program is not significant in this context since father was not entitled to an extended reunification period after his late request to be provided services. If we were to accept father's argument then a juvenile court would be prevented from terminating reunification services at a six-month review hearing any time a parent was required to participate in a batterer's program.

A parent is required to demonstrate sufficient progress in his or her court-ordered treatment programs, but it is not a requirement that a parent complete all programs in their entirety before reunification can occur. (See § 366.22, subd. (a)(1).) Instead, the agency was required to anticipate that father could continue his batterer's program through the provision of either family maintenance or enhancement services in the event the child was returned to either his care or mother's.[5] (See § 362, subd. (c); *In re Destiny D.* (2017) 15 Cal.App.5th 197, 211–212.) Father's reunification services were designed to remedy the problems that led to the loss of the child's custody and he was required to make progress in those services within the time limits fixed at the child's initial removal. His belated request and effort to complete one component of his service plan does not detract from the adequacy of the services provided to him.

In sum, father has failed to show the agency's implementation of his case plan and efforts to assist him in complying with it were unreasonable. The primary obstacle that prevented father from reunifying with his child was his own failure to participate in mental health services. The fact that father did not participate in any of his therapy sessions is reflective of father's lack of reasonable effort as opposed to the agency's. Presumably, his untreated mental health conditions would have been identified and

---

[5]     "Enhancement services" are child welfare services designed to enhance the child's relationship with the parent who does not have custody. (*In re Destiny D.*, *supra*, 15 Cal.App.5th at p. 212.) Enhancement services are not designed to reunify parent and child but to address issues that brought the child into the dependency system. (*In re A.C.* (2008) 169 Cal.App.4th 636, 642, fn. 5.)

hopefully addressed had father participated in therapy as required by his case plan. Therefore, substantial evidence supports the juvenile court's finding he received reasonable reunification services.

## DISPOSITION

The juvenile court's order is affirmed.