Filed 2/9/24  In re Madison W. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MADISON W. et al., Persons Coming Under the Juvenile Court Law. | B323340 (Los Angeles County Super. Ct. No. 22CCJP01775) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MORIYA B. et al., Defendants and Appellants. | |

| | |
|---|---|
| In re JACKSON F., a Person Coming Under the Juvenile Court Law. | B328767 (Los Angeles County Super. Ct. No. 22CCJP01775) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MORIYA B., Defendant and Appellant. | |

APPEALS from the orders of the Superior Court of Los Angeles County, Jean M. Nelson, Judge. Affirmed in part, reversed in part, and dismissed in part as moot.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant Moriya B.

Linda S. Votaw, under appointment by the Court of Appeal, for Defendant and Appellant Cammron F.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

On July 25, 2022 the juvenile court sustained a first amended petition filed by the Los Angeles County Department of Children and Family Services (Department) pursuant to Welfare and Institutions Code section 300, subdivision (a), and former subdivision (b)(1),[1] finding the history of domestic violence between Moriya B. and her boyfriend Cammron F. placed the couple's three-year-old son Jackson F. and Moriya's 13-year-old daughter Madison W. at substantial risk of harm. The court also found Cammron's history of substance abuse and current abuse of alcohol placed Jackson at substantial risk of harm. At the same hearing, the court declared Madison a dependent child of the court, terminated jurisdiction, and entered a final custody order awarding joint legal custody of Madison to Moriya and Madison's father, Matthew W., and awarding sole physical custody to Matthew. On October 13, 2022, at a continued disposition hearing as to Jackson, the court declared Jackson a dependent child of the court and removed him from Moriya's and Cammron's custody.

On appeal, Moriya contends there was insufficient evidence to support the juvenile court's jurisdiction finding that the domestic violence between Moriya and Cammron placed Madison at substantial risk of harm and the disposition order removing Madison from Moriya. Moriya also appeals the disposition order

---

[1]     The Legislature amended section 300, effective January 1, 2023, in part by revising subdivision (b)(1) to specify in separate subparagraphs ways in which a child may come within the jurisdiction of the juvenile court due to the failure or inability of the child's parent or guardian to adequately supervise or care for the child. Further undesignated statutory references are to the Welfare and Institutions Code.

as to Jackson, arguing his removal from her custody was not supported by substantial evidence and the court abused its discretion by ordering monitored visitation. Cammron filed a brief joining the arguments raised in Moriya's appeal as to Jackson's removal. Finally, Moriya appeals the court's refusal to provide enhancement services to her at the time Jackson was returned to Cammron's custody and its order transferring the case to Riverside County. While the appeals were pending, the juvenile court terminated jurisdiction over Jackson and granted Cammron sole legal and physical custody.

On Moriya's appeal regarding Madison, we reverse the jurisdiction finding under section 300, subdivision (a), affirm the finding under former subdivision (b)(1), dismiss the challenge to the disposition order as moot, and affirm the final custody order. We dismiss Moriya's and Cammron's appeals of the disposition orders regarding Jackson as moot. We affirm the orders denying enhancement services and transferring the case to Riverside.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 9, 2022 the Department filed a petition under section 300, subdivision (a), and former subdivision (b)(1), asserting identical allegations under both subdivisions that Moriya and Cammron had a history of engaging in violent altercations in front of Jackson. Specifically, the petition alleged that, during a March 2022 altercation, Moriya had "repeatedly struck [Cammron's] genitals with [a] Taser" while she was holding Jackson. After Moriya tripped and fell on top of Jackson, Cammron dragged Moriya out of the home by the wrist.

4

Madison, who lived primarily with Matthew,[2] was not home at the time of the incident. The petition alleged Moriya's and Cammron's behavior endangered the children's physical health and safety, placing them at risk of serious physical harm.

A few days after the petition was filed, another domestic dispute occurred between Moriya and Cammron. On May 13, 2022 Madison spent the night at her mother's home. In the middle of the night, Madison woke up to the sounds of Moriya and Cammron arguing. She went back to sleep but woke up again at 5:30 a.m. to the sounds of arguing. She saw that one of the bedroom doors had been broken off its hinges. Matthew told the Department social worker that Madison was upset by the incident and was crying when she returned to Matthew's home that morning. During the detention hearing on May 23, 2022, Madison's counsel told the court Madison did not feel safe in her mother's home.

On July 22, 2022 the Department filed a first amended petition that contained the allegations from the initial petition and added an allegation that Cammron had a history of substance abuse and was a current abuser of alcohol. The Department alleged multiple domestic violence incidents had occurred, at least one in the presence of Jackson and Madison, while Cammron was under the influence of alcohol. The first amended petition alleged this behavior placed Jackson at risk of serious physical harm.

At the July 25, 2022 jurisdiction and disposition hearing, the juvenile court sustained the allegations in the first amended

---

[2] Moriya and Matthew had an informal custody arrangement pursuant to which Madison lived primarily with Matthew and visited Moriya on some weekends and holidays.

petition.  Proceeding to disposition as to Madison, the court declared her a dependent of the court under section 300 and removed her from Moriya's custody.  At the same hearing the court found the conditions justifying the initial assumption of jurisdiction no longer existed, terminated jurisdiction, and entered a final custody order granting joint legal custody of Madison to Moriya and Matthew and awarding sole physical custody to Matthew with unmonitored visitation for Moriya. Moriya timely appealed.

At the continued disposition hearing for Jackson on October 13, 2022, the juvenile court declared Jackson a dependent child of the court under section 300 and removed him from Moriya's and Cammron's custody.  The court ordered monitored visitation for Moriya and unmonitored visitation for Cammron.  Moriya's court-ordered case plan required her to complete 10 drug tests, 12 weeks of a domestic violence program, parenting classes, and individual counseling.  Moriya and Cammron timely appealed.

In reports prepared prior to the six-month review hearing, the Department stated it had been unable to reach Moriya despite multiple attempts to contact her by telephone, text message, mail, and home visits.  Moriya had missed all of her court-ordered drug tests and had not provided any information regarding enrollment or progress in court-ordered programs. Jackson's caregiver (Moriya's mother) reported Moriya visited Jackson multiple times per week depending on her work schedule and had video calls with him when she could not visit.  According to Cammron, Moriya said she did not trust the Department, she was unwilling to have any contact with the social worker, and she had blocked the social worker's phone number.  Both Cammron

and the caregiver had urged Moriya to call the social worker, but to no avail. Cammron told the social worker Moriya was not seeking reunification with Jackson. Cammron also informed the social worker he had moved to Riverside County for work. The Department recommended the juvenile court return Jackson to Cammron's custody and transfer the case to Riverside.

The six-month review hearing was held on April 18, 2023. Moriya did not appear, but her counsel stated she did not object to the Department's recommendation to release Jackson to Cammron's custody. She did object to the request to transfer the case to Riverside. The juvenile court released Jackson to Cammron's custody. While the court commended Moriya for her regular visitation, it found Moriya had not made any progress on her case plan. At the conclusion of the hearing, Moriya's counsel inquired whether the court would order enhancement services for Moriya. The court declined based on Moriya's failure to make progress on her case plan. Moriya's counsel responded, "Note my objection." Moriya filed a timely notice of appeal.

On July 11, 2023 the juvenile court held a hearing on the Department's motion to transfer the case to Riverside. Moriya again did not appear, but her attorney objected to the transfer because Moriya lived in Los Angeles County. The court granted the motion to transfer, and Moriya again timely appealed.[3]

---

[3] We consolidated the appeal regarding Madison with the appeals from Jackson's disposition order. We separately consolidated Moriya's appeal from the order made at the six-month review hearing as to Jackson denying Moriya enhancement services and from the order transferring the case to Riverside. We consider the appeals together in this opinion.

7

On October 17, 2023, the juvenile court of Riverside County found the conditions justifying the initial assumption of jurisdiction over Jackson no longer existed. The court terminated jurisdiction, staying its order pending receipt of a juvenile custody order. On October 30, 2023 the court terminated jurisdiction over Jackson and entered a final custody order granting sole legal and physical custody of Jackson to Cammron and ordering "[n]o visits to Mother until she presents herself to Family Law Court."[4] Neither Moriya nor Cammron has appealed from the order terminating jurisdiction over Jackson or the final custody order, and their time to do so has expired.

## DISCUSSION

### A. *Governing Law and Standard of Review*

Section 300, subdivision (a), provides that jurisdiction may be assumed if "[t]he child has suffered, or there is a substantial risk the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." "Nonaccidental" generally means a parent or guardian "acted intentionally or willfully." (*In re R.T.* (2017) 3 Cal.5th 622, 629 (*R.T.*).)

Section 300, former subdivision (b)(1), authorizes the juvenile court to assume jurisdiction when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or

---

[4] On our own motion we take judicial notice of the October 17, 2023 minute order and the October 30, 2023 final custody order entered by the Riverside County Superior Court. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

8

inability of the child's parent or guardian to adequately supervise or protect the child . . . or by the willful or negligent failure of the parent to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

"A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601 (*Cole L.*); accord, *In re L.W.* (2019) 32 Cal.App.5th 840, 848; see *R.T.*, *supra,* 3 Cal.5th at p. 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)  "Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*Cole L.,* at pp. 601-602; accord, *In re L.O.* (2021) 67 Cal.App.5th 227, 238 ["'Although there must be a present risk of harm to the minor, the juvenile court may consider past events to determine whether the child is presently in need of juvenile court protection.'"].)  "A parent's "'[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*Cole L.*, at p. 602; accord, *In re J.A.* (2020) 47 Cal.App.5th 1036, 1048.)

9

We review the juvenile court's jurisdiction findings for substantial evidence in light of the whole record.  (*In re I.C.* (2018) 4 Cal.5th 869, 892; *R.T., supra*, 3 Cal.5th at p. 633 ["'In reviewing the jurisdictional findings and disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them.'"].)  Substantial evidence is "evidence which is reasonable, credible, and of solid value."  (*In re I.C.*, at p. 892; accord, *Cole L., supra*, 70 Cal.App.5th at p. 602.)  "'[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'"  (*R.T.*, at p. 633; accord, *In re I.J.* (2013) 56 Cal.4th 766, 773; *Cole L.*, at p. 602 ["while substantial evidence may consist of inferences, any inferences must rest on the evidence; inferences based on speculation or conjecture cannot support a finding"].)  "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders."  (*In re E.E.* (2020) 49 Cal.App.5th 195, 206; accord, *In re D.B.* (2018) 26 Cal.App.5th 320, 328-329.)

B.    *Mootness and Dependency Appeals*
    "A court is tasked with the duty "'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."'"  (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*).)  "A case becomes moot when events "'render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant [the plaintiff] any effect[ive] relief.'" [Citation.]  For relief to be 'effective,' two requirements must be

met.  First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*Ibid*.)  In other words, "relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status.' [Citation.]  It follows that, to show a need for effective relief, the plaintiff must first demonstrate that he or she has suffered from a change in legal status." (*Id*. at p. 277.)  "Although a jurisdictional finding that a parent engaged in abuse or neglect of a child is generally stigmatizing, complaining of 'stigma' alone is insufficient to sustain an appeal.  The stigma must be paired with some effect on the plaintiff's legal status that is capable of being redressed by a favorable court decision." (*Ibid*.)

Even where an appeal is moot, however, "courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*D.P.*, *supra,* 14 Cal.5th at p. 282.)  The Supreme Court explained that reviewing courts will generally exercise their discretion when the case presents an issue of broad public interest that is likely to recur, there may be a recurrence of the controversy between the parties, or a material question remains for the court to determine.  (*Ibid*.)  The court also identified additional factors reviewing courts may evaluate when considering whether to exercise their discretion to decide a moot case, including whether a challenged jurisdiction finding could impact current or future dependency proceedings, and the nature of the allegations against the parent (with more egregious findings showing a parent's greater interest in challenging the findings).  (*Id*. at pp. 285-286.)  In addition, courts may consider why the appeal became moot; for example, principles of fairness may favor discretionary review of cases rendered moot "by the

11

prompt compliance or otherwise laudable behavior of the parent challenging the jurisdictional finding on appeal." (*Id.* at p. 286.) "It would perversely incentivize noncompliance if mootness doctrine resulted in the availability of appeals from jurisdictional findings only for parents who are less compliant or for whom the court has issued additional orders." (*Ibid.*)

C.    *Moriya's Appeal of the Jurisdiction Findings and Disposition Orders as to Madison*

1.    *Termination of juvenile court jurisdiction over Madison does not moot Moriya's appeal of the jurisdiction findings*

Moriya's appeal as to Madison challenges the sufficiency of the evidence supporting the juvenile court's jurisdiction findings and the disposition order removing Madison from Moriya's custody.  In her supplemental letter brief,[5] Moriya argues the appeal is not moot because the jurisdiction findings and removal order served as the basis for the court's final custody order, which she has also appealed.  The Department declines to take a position on mootness.

In her notice of appeal, Moriya checked the boxes on the Judicial Council's approved form JV-800, notice of appeal-juvenile, stating her intent to appeal the juvenile court's section 360 declaration of dependency and removal of custody

---

[5]    On November 2, 2023 we requested the parties address in supplemental briefing whether the juvenile court's orders terminating jurisdiction over Madison and Jackson and entering final custody orders mooted Moriya's appeal regarding Madison and Moriya's and Cammron's appeals from the disposition orders as to Jackson.

from a parent, as well as the boxes for appeal of section 300 jurisdiction findings and "other orders." The notice of appeal attached the minute order from the hearing at which the jurisdiction findings, disposition order, termination order, and final custody order were made, although it did not attach a copy of the final custody order. We liberally construe the appeal of "other orders" to include an appeal from the orders terminating jurisdiction over Madison and awarding sole physical custody to Matthew. (See *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882 ["Rule 8.100(a)(2)'s liberal construction requirement reflects the long-standing "'law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.'"]; see also Cal. Rules of Court, rule 8.100(a)(2).)

Because we construe Moriya's notice of appeal to include an appeal from the orders terminating jurisdiction and awarding sole physical custody to Matthew, Moriya's appeal from the jurisdiction findings is not moot. (See *In re Rashad D.* (2021) 63 Cal.App.5th 156, 159 ["[T]ermination of dependency jurisdiction does not necessarily moot an appeal from a jurisdiction finding that directly results in an adverse juvenile custody order. But in most cases, including the one at bar, for this court to be able to provide effective relief, the parent must appeal not only from the jurisdiction finding and disposition order but also from the orders terminating jurisdiction and modifying the parent's prior custody status. Without the second appeal, we cannot correct the continuing adverse consequences of

13

the allegedly erroneous jurisdiction finding."]; accord, *In re Gael C.* (2023) 96 Cal.App.5th 220, 225.)

        2.      *Substantial evidence does not support the jurisdiction finding under section 300, subdivision (a)*

As we explained in *Cole L.*, *supra*, 70 Cal.App.5th at p. 603, "Under certain circumstances incidents of domestic violence between a child's parents, if they occur in the child's immediate presence, may support a jurisdiction finding under section 300, subdivision (a). [Citation.] For example, if a father strikes an infant's mother while she is holding the child or an older child intervenes during a fight to protect her mother from her father's abuse, the risk of harm to the child may be properly viewed as nonaccidental." However, the "potential for accidental injury during parents' physically violent fights in the presence of bystander children," without more, is insufficient to establish dependency jurisdiction under subdivision (a). (*Cole L.*, at p. 603 ["[a]n unintended injury to a bystander child that results from an intentional act directed at another—for example, due to an object thrown by one parent at another during an argument—does not satisfy that statutory requirement [of nonaccidental injury under subdivision (a)]"].)

Here, Madison was not present for the March 2022 altercation and, while she was in the home during the May 2022 incident, she was in her bedroom and did not witness any domestic violence as it occurred—she only heard arguing and saw the door had been broken off its hinges. Accordingly, there was no evidence any violence took place in Madison's presence, let alone under circumstances that would support a finding of substantial risk that Madison would suffer serious physical harm inflicted nonaccidentally. (See *Cole L.*, *supra,* 70 Cal.App.5th at

14

p. 604 [evidence did not support jurisdiction under section 300, subdivision (a), where children were asleep in their bedroom during domestic violence incident].)

       3.     *Substantial evidence supports the jurisdiction finding under section 300, former subdivision (b)(1)*

Exposure to domestic violence, even absent the threat of nonaccidental injury, may serve as the basis for dependency jurisdiction pursuant to section 300, subdivision (b)(1). (See *In re T.V.* (2013) 217 Cal.App.4th 126, 135 ["[e]ven though [the child] had not been physically harmed, the cycle of violence between the parents constituted a failure to protect her"]; *In re R.C.* (2012) 210 Cal.App.4th 930, 942 ["'"Both common sense and expert opinion indicate spousal abuse is detrimental to children."'"]; *In re S.O.* (2002) 103 Cal.App.th 453, 460-461 ["'domestic violence in the same household where children are living is neglect; it is a failure to protect [them] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it'"].)

Moriya does not deny she engaged in physical altercations with Cammron in March and May 2022, although Moriya and Cammron have made inconsistent statements regarding what occurred during the incidents. Nonetheless, Moriya argues the evidence did not establish Madison was at current risk of harm at the time of the jurisdiction hearing because Madison lived primarily with Matthew and was safe in his care. Moriya's contention ignores the May 2022 incident, at which time Moriya was living with Matthew but spending the night with Moriya; the altercation between Moriya and Cammron resulted in Madison feeling unsafe in Moriya's home. In addition, despite the recent significant incidents of domestic violence, Moriya and Cammron

15

continued to be in a relationship, and there was evidence Moriya did not understand the impact these violent incidents had on her children. For example, two weeks before the May 2022 incident, Moriya told the Department social worker that the Department's involvement was "excessive" and the children were not in any danger. Finally, the fact that Madison lived primarily with Matthew certainly mitigated her risk of future harm, but a significant risk nonetheless remained. Accordingly, substantial evidence supported the court's finding of jurisdiction under section 300, former subdivision (b)(1).

4. *Termination of juvenile court jurisdiction over Madison moots Moriya's appeal of the disposition order*

Moriya's challenge to the disposition order is moot because she is no longer subject to any orders made at disposition, which have been superseded by the juvenile court's order terminating jurisdiction and the final custody order. Because the disposition order is no longer in effect, we cannot provide any relief that will have a practical, tangible impact. (See *D.P.*, *supra*, 14 Cal.5th at pp. 276-277.)

While a reviewing court has discretion to reach the merits of a moot issue in certain circumstances, Moriya has not asked us to exercise that discretion or identified any factors warranting our exercise of discretion. (See *D.P., supra*, 14 Cal.5th at p. 282; *In re Gael C., supra*, 96 Cal.App.5th at pp. 225-226.)

5. *Moriya has forfeited any challenge to the final custody order*

While we liberally construe Moriya's notice of appeal to include an appeal of the final custody order, Moriya has not

16

presented in her opening, reply, or supplemental briefs any legal or factual arguments challenging the order. In particular, she has not addressed why the final custody order was not in Madison's best interest or how the juvenile court abused its discretion in awarding sole physical custody to Matthew. (See *In re John W.* (1996) 41 Cal.App.4th 961, 965 [when making a juvenile court custody order, "it is the best interests of the child, in the context of the peculiar facts of the case before the court, which are paramount"]; see also *In re C.W.* (2019) 33 Cal.App.5th 835, 863 [juvenile court custody and visitation orders reviewed for abuse of discretion].)

To the contrary, Moriya principally argues in her appellate briefs that substantial evidence does not support the disposition order removing Madison from her care because Madison was safe in Matthew's care. Accordingly, Moriya has forfeited or abandoned any argument the juvenile court abused its discretion in entering the final custody order. (See *In re Rashad D., supra*, 63 Cal.App.5th at p. 167 [failure to appeal orders terminating jurisdiction and awarding custody "forfeited any challenge to those rulings"]; see also *Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 653 ["An appellant abandons an issue by failing to raise it in the opening brief."].)

D.  *Termination of Juvenile Court Jurisdiction over Jackson Moots Moriya's and Cammron's Appeals of the Disposition Order as to Jackson*

Moriya's and Cammron's appeals challenge the sufficiency of the evidence supporting the juvenile court's disposition order removing Jackson from their custody. Moriya also argues the court abused its discretion by ordering her visits to be monitored. Neither parent challenges the court's jurisdiction findings. As

17

discussed, because the disposition orders have been superseded by entry of the final custody order, Moriya and Cammron are no longer subject to any orders made at disposition. Accordingly, we are unable to provide any effective relief. (See *D.P.*, *supra*, 14 Cal.5th at pp. 276-277.) In addition, Cammron has already received the outcome he seeks on appeal—return of Jackson to his custody.

Finally, Moriya argues we should exercise our discretion to reach the merits of her appeal because, due to Jackson's young age, "a recurrence of the underlying controversy likely will recur" and the "jurisdictional findings as to Moriya, if erroneous, could have severe and unfair consequences to both Jackson and Moriya in future court proceedings." However, this potential harm is speculative (see *D.P.*, *supra*, 14 Cal.App.5th at p. 285),[6] and, as discussed, Moriya has not challenged the jurisdiction findings as to Jackson.

E.    *The Juvenile Court Did Not Abuse Its Discretion in Denying Enhancement Services to Moriya in Jackson's Case*

Moriya argues the juvenile court abused its discretion when it declined to order enhancement services for Moriya at the six-month review hearing when the court returned Jackson to Cammron's custody. Enhancement services are "'child welfare services offered to the parent not retaining custody, designed to

---

[6]    Moriya relies on *In re Daisy H.* (2011) 192 Cal.App.4th 713, for the proposition that we should exercise our discretion to review moot findings where those findings could have unfair consequences in future court proceedings. However, in *D.P.*, *supra*, 14 Cal.5th at p. 278, the Supreme Court disapproved *In re Daisy H.* "to the extent it held . . . that speculative future harm is sufficient to avoid mootness."

18

enhance the child's relationship with that parent.'" (*In re C.S.* (2022) 80 Cal.App.5th 631, 636; accord, *In re Destiny D.* (2017) 15 Cal.App.5th 197, 212-213.) "Enhancement services" are not defined by statute but are authorized by the court's general authority to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." (§ 362, subd. (a); see *C.S.*, at p. 637; *In re A.L.* (2010) 188 Cal.App.4th 138, 142, fn. 2.) Accordingly, an order for enhancement services is subject to the court's discretion. (*C.S.*, at p. 637; *Destiny D.*, at p. 212.)

Even if not forfeited for failure to sufficiently object in the juvenile court,[7] Moriya's argument is without merit. The court found Moriya had failed to make any progress on her court-ordered case plan and refused to have any communication with the Department. Moriya has not disputed those findings on appeal. There is no indication in the record that Moriya was willing to participate in enhancement services, nor did she suggest any particular services that would benefit the family. Given her refusal to participate in prior services, the court's refusal to provide additional services was neither arbitrary nor irrational. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [under abuse of discretion standard, order must be affirmed unless juvenile court has "'"exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd

---

[7] As discussed, Moriya's counsel made only a general objection to the denial of enhancement services. Such objections "are insufficient to preserve issues for review. [Citation.] The objection must state the ground or grounds upon which the objection is based." (*In re E.A.* (2012) 209 Cal.App.4th 787, 790; accord, *In re Daniel B.* (2014) 231 Cal.App.4th 663, 672.)

19

determination"""]; *In re Destiny D., supra,* 15 Cal.App.5th at p. 213 [same].)

## DISPOSITION

With respect to Moriya's appeal as to Madison: (1) the juvenile court's jurisdiction finding pursuant to section 300, subdivision (a), is reversed; (2) the jurisdiction finding pursuant to section 300, former subdivision (b)(1), and the July 25, 2022 final custody order are affirmed; and (3) Moriya's appeal of the disposition order is dismissed as moot. Moriya's and Cammron's appeals of the disposition order with respect to Jackson are dismissed as moot. The orders in Jackson's case denying Moriya enhancement services and transferring the case to Riverside are affirmed.

FEUER, J.

We concur:

SEGAL, Acting P. J.

MARTINEZ, J.