Filed 10/16/25  In re Jo. T. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Jo. T. et al., Persons Coming Under the Juvenile Court Law. | B332149<br><br>(Los Angeles County Super. Ct. No. 20LJJP00374D–E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>C.M.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jennifer W. Baronoff, Juvenile Court Referee.  Dismissed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Alleged father C.M. appeals the juvenile court's jurisdiction finding that he knew of mother's mental and emotional problems and failed to protect the children, Jo. and Je.  (See Welf. & Inst. Code, § 300, subd. (b)(1).)  C.M. does not challenge the juvenile court's jurisdictional findings with respect to mother or the dispositional orders.  The Los Angeles County Department of Children and Family Services (DCFS) contends that C.M.'s appeal is nonjusticiable and there is no basis to exercise discretionary review.  We agree and dismiss the appeal.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother has three children: twins Jo. and Je., born November 2011, and J.B., born May 2017.  According to mother, C.M. is the biological father of Jo. and Je.  E.B. is the biological father of J.B. and presumed father of Jo. and Je., whom he has raised since they were two years old.  Mother and E.B. are not parties to this appeal.

In a prior dependency proceeding in September 2020, the juvenile court found C.M. to be the alleged father of Jo. and Je. and sustained a petition as to Jo.  The petition alleged that mother failed to provide appropriate medical care for Jo. and abused marijuana.  In October 2021, the court terminated jurisdiction, awarded mother sole legal and physical custody of Jo., and ordered no visitation for C.M.

In July 2023, mother was arrested after she repeatedly struck Jo. with her fists and a belt.  She bit the child on his arm and multiple times on his back.  Jo. later reported that mother

2

grabbed him and bit him on the face, arm, and back. The minor daughter of a family friend who was present during the incident stated that mother took Jo. into a bedroom and she could hear Jo. crying and asking mother to stop. Mother exited the room and said: " 'I'm glad you're the only one here so no one can judge me. You don't want to go in there. I just fucked him up pretty bad.' " The minor saw blood on Jo.'s shirt and observed that his face was swollen. E.B. and his sister also saw Jo. after the attack. They observed that Jo.'s face was swollen, his shirt was bloody, and he had abrasions and bite marks.

DCFS filed a dependency petition alleging that mother physically abused Jo. and Je., she failed to protect the children, and her physical abuse of Jo. and Je. endangered each child and their siblings. The petition further alleged that mother had mental and emotional problems and fathers E.B. and C.M. knew of these problems and failed to protect the children.

C.M. told DCFS that he had not had contact with Jo. and Je. "in several years." He claimed mother kept the children away from him. According to C.M., "mother would get mad at him for any reason and then flee with the children out of state." He stated that mother "has a history of mental health [*sic*] and will act 'crazy' when she does not take her medication."

In July 2023, C.M. filed a statement regarding parentage. He stated he believed he was the father of Jo. and Je., he told "[t]he world at large" the children were his, and he talked to the children on the phone and via video calls. C.M. stated that his father had provided money for the children and his sister had spent time with them.

At the initial hearing, the juvenile court detained Jo. and Je. from mother and C.M. The court found C.M. to be the alleged father of Jo. and Je.

DCFS interviewed the family further in connection with an August 2023 jurisdiction and disposition report. Mother reported that C.M. was "non-existent" in Jo. and Je.'s lives, he had provided no support, he had no relationship with the children, and he had only seen them once when they were born. Jo. provided minimal statements related to paternity. Je. believed C.M. was Jo.'s father, but not hers, and she said she knew nothing about C.M.

C.M. also expressed uncertainty as to whether Je. was his child. C.M. found out about the children only after his relationship with mother had ended. He told a social worker: " 'I don't think [Je.] is mine. The mom would always say that [Je.] wasn't mine but [Jo.] was.' " When asked whether he believed the twins had different fathers, he stated he did not know and had " 'wanted a DNA test but, in [his] heart, they are [his] kids.' " He then stated he was not interested in taking a DNA test. C.M. expressed interest in obtaining custody of the children, but he had minimal contact with them and had not seen them in nine years.

C.M. claimed that mother was " 'always abusing the kids' "; she had previously broken Je.'s arm, although C.M. could not remember when this occurred; and mother " 'screams, yells, hits, and bites people.' " However, C.M. also reported that he had lived in Nevada from 2013 to 2023 and had only moved back to California a few months earlier.

In August 2023, C.M. filed a second parentage questionnaire. C.M. stated that he was not present at the

4

children's birth, was not married to or living with mother at the time of the children's conception and birth, had not raised the children jointly with another adult, had not received the children into his home, and had not completed a parentage test. However, C.M. stated he held himself out openly as Jo. and Je.'s father.

At the August 2023 jurisdiction and disposition hearing, the juvenile court found E.B. to be the presumed father of Jo. and Je. The court found C.M. remained an alleged father only. C.M.'s counsel argued the failure to protect allegation against C.M. should be stricken because he had not seen the children in years and there was no evidence that C.M. knew of mother's mental and emotional problems.

The juvenile court amended the petition to remove allegations that E.B. failed to protect the children and sustained the petition as amended. The juvenile court stated: "I'm going to leave [C.M.] in . . . as a failure to protect in that he should have known." However, the amended petition did not reflect this change. The court ordered family reunification services for C.M., including individual counseling, parenting courses, and monitored phone visitation.

C.M. timely appealed.

## DISCUSSION

C.M. contends there is insufficient evidence to support the court's jurisdictional findings that he knew that mother posed a danger to Jo. and Je. and that he failed to protect them, citing his limited contact with the children and his lack of custody or visitation rights. DCFS argues that the appeal is nonjusticiable

5

and we should not exercise our discretion to reach the merits. We agree with DCFS.

## I. The Appeal is Moot

"It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489 (*I.A.*), overruled on another ground in *In re D.P.* (2023) 14 Cal.5th 266, 283 (*D.P.*).) "An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*I.A.*, at p. 1490.)

It is further well established that " '[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) "Thus, where jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot. [Citation.]" (*D.P.*, *supra*, 14 Cal.5th at p. 283.)

C.M. does not challenge the jurisdictional findings as to mother. Thus, even if he were to prevail on appeal, Jo. and Je. would remain dependents of the juvenile court. (*D.P.*, *supra*, 14 Cal.5th at pp. 283–284; *I.A.*, *supra*, 201 Cal.App.4th at pp. 1492–1493.)

6

C.M. nevertheless argues that the appeal is not moot because the determination that he is an offending parent "may play a significant role" in future custody proceedings in the juvenile court or family court.  A determination that a parent is offending, standing alone, is insufficient to establish that the case is not moot.  (See *D.P.*, *supra*, 14 Cal.5th at p. 277 [stigma alone is insufficient to sustain an appeal; stigma must be paired with effect on plaintiff's legal status]; see also *In re Destiny D.* (2017) 15 Cal.App.5th 197, 209 [whether parent is offending or non-offending is "not necessarily outcome determinative" and does not limit juvenile court's ability to issue custody and visitation orders to further child's best interests].)  Rather, "a case is not moot where a jurisdictional finding affects parental custody rights [citation], curtails a parent's contact with his or her child [citation], or 'has resulted in [dispositional] orders which continue to adversely affect' a parent [citation]."  (*D.P.*, at pp. 277–278.)

As an alleged father, C.M. was " ' "not entitled to custody, reunification services, or visitation." ' [Citation.]"  (*In re A.H.* (2022) 84 Cal.App.5th 340, 350.)  And, as C.M. acknowledged in his opening brief, he had neither custody of Jo. and Je. nor visitation with the children prior to these proceedings.  Here, instead of restoring rights to C.M., reversal of the juvenile court's jurisdiction finding and resulting disposition orders would result in the *loss* of visitation rights.  (Cf. *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431–1432 [despite termination of jurisdiction, findings that presumed father forcibly raped and physically

abused daughter were not moot because of adverse effect on custody rights].)[1]

Because C.M. fails to identify any adverse legal effect of the court's jurisdictional finding or effective relief this court could provide to him, the appeal is moot.

## II.    We Decline To Decide the Merits of This Appeal

Even if a case is moot, "courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*D.P.*, *supra*, 14 Cal.5th at p. 282.)  That discretion is generally exercised "when 'the case presents an issue of broad public interest that is likely to recur,' 'when there may be a recurrence of the controversy between the parties,' or 'when a material question remains for the court's determination.' [Citations.]" (*Ibid*.)  Because dependency proceeding appeals are "particularly prone to mootness problems" (*id*. at p. 284), our high court has identified a non-exhaustive list of factors for assessing whether a court should exercise discretionary review of a moot appeal in a dependency proceeding.  (*Id*. at pp. 285–286.)  A court ultimately "should be guided by the overarching goals of the dependency system" in deciding whether to exercise that discretion on a case-by-case basis.  (*Id*. at p. 286.)

Among the factors we may consider is "whether the challenged jurisdictional finding 'could be prejudicial to the appellant or could potentially impact the current or future

_____

[1]    C.M. did not challenge the court's disposition orders in his opening brief.  On reply, he contends the appeal is not moot because the disposition orders "affected Father's custodial and visitation rights."  This argument is forfeited.  In any event, as discussed, C.M. did not have custodial or visitation rights and fails to establish that the disposition orders adversely affected him.

8

dependency proceedings,' or ' "could have other consequences for [the appellant], beyond jurisdiction." ' [Citations.]" (*D.P.*, *supra*, 14 Cal.5th at p. 285.) As discussed, C.M. contends that his status as an offending parent could play a "significant role" in potential future custody determinations. However, at the time of the court's orders, C.M. had not seen the children for nine years. He is currently an alleged father only and he declined a DNA test to determine whether he is Jo. and Je.'s biological father. He has not challenged the juvenile court's paternity finding determining he is an alleged father and rejecting his request to be deemed the children's presumed father. His failure to establish parentage is more likely to prejudice him with respect to a future custody determination than the juvenile court's jurisdictional findings.

Our high court has also indicated that we may consider "whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct" when deciding whether discretionary review is proper. (*D.P.*, *supra*, 14 Cal.5th at pp. 285–286.) "The more egregious the findings against the parent, the greater the parent's interest in challenging such findings." (*Id.* at p. 286.) Here, the conduct, or lack thereof, forming the basis of the findings against C.M. is not so egregious that it warrants the review of an otherwise nonjusticiable appeal.

We "may also consider why the appeal became moot. Where a case is moot because one parent appealed and not the other, but the findings against the parent who has appealed are based on more serious conduct, it may serve the interest of justice to review the parent's appeal." (*D.P.*, *supra*, 14 Cal.5th at p. 286.) The opposite is true here. The unchallenged findings concerning mother are based on far more serious and disturbing conduct than the findings made with respect to C.M.

Considering these factors and the overarching goals of the dependency system, we decline to exercise our discretion to address the moot issues raised in this appeal.[2]

---

[2] Even if we were to reach the merits of the appeal, we would conclude that substantial evidence supports the juvenile court's jurisdictional findings. Welfare and Institutions Code section 300, subdivision (b)(1), "requires no more than the parent's 'failure or inability . . . to adequately supervise or protect the child.' [Citations.]" (*In re R.T.* (2017) 3 Cal.5th 622, 629.) Although C.M.'s involvement with Jo. and Je. was limited, C.M. claimed to be in contact with the children and was, by his own admission, aware of mother's mental health struggles and her past physical abuse of the children. Indeed, he understood this abuse to be severe, as he believed mother had previously broken Je.'s arm. Thus, there is evidence to support a finding that he knew the children were at risk from mother's abuse, yet he failed to take any steps to protect them.

## DISPOSITION

The appeal is dismissed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.


We concur:



EDMON, P. J.



EGERTON, J.